**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 07-279C
(Judge Baskir)

**THEODORE FATHAUER**, et al

plaintiffs,

v.

**THE UNITED STATES,**

defendant.

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RICHARD J. HIRN
General Counsel
National Weather Service Employees Organization
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812

attorney for plaintiffs

## Table of Contents

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Question Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. The plain language of 5 U.S.C. § 5541 and §5546(a) entitles Plaintiffs to Sunday differential. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. The legislative history of Pub. L. No. 89-504 does not indicate an intent to limit Sunday differential to full-time employees. . . . . . . . . . 10

III. Denial of Sunday differential to part-time career employees is contrary to the intent of the Federal Employee Part-time Career Employment Act because it penalizes rather than promotes part-time employment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Table of Cases and Authorities

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Lykes Bros. S.S. Co., Inc. v. United States*, 513 F.2d 1342, 1349 (Cl. Ct. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Snyder v. Nicholson,* 489 F.3d 1213, 1217 (Fed. Cir. 2007) . . . . . . . . . . 10

Federal Employees Salary Act of 1965, Pub. L. No. 89-301 . . . . . . . . . . 11

Federal Salary and Fringe Benefits Act of 1966, Pub. L. 89-504 . . . . . 5, 8

* Federal Employee Part-Time Career Employment Act of 1978, Pub. L. No. 95-437, 5 U.S.C. § 3401 et seq. . . . . . . . . . . . . . . . . . . . 2, 12

* 5 U.S.C. § 2105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

* 5 U.S.C. § 5541. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

* 5 U.S.C. § 5546(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *im passim*

5 C.F. R. § 550.171(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1965 U.S.C.C.A.N. 3817, 3821. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1967 U.S.C.C.A.N. 1538, 1541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

* 46 Comp. Gen. 337, 339. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

* Authorities chiefly relied upon.

## Introduction

This is a suit for lost premium pay brought by five forecasters at the National Weather Service who have not been paid Sunday differential because they are part-time employees. As will be discussed herein, 5 U.S.C. § 5546(a) entitles Federal employees to a 25% differential when they work a regularly scheduled shift on a Sunday. However, the Office of Personnel Management his limited eligibility for this differential to full-time employees, only. The plaintiffs will demonstrate in this brief that they are entitled to Sunday differential, notwithstanding OPM's regulation, because the statute grants Sunday differential to all Federal employees, regardless of whether they work full or part-time.

## Question Presented

Whether Federal employees who work less than 40 hours a week are entitled to the Sunday pay differential authorized by 5 U.S.C. § 5546(a)?

## Statement of the Case

Each of the plaintiffs is employed as a Meteorologist by the National Weather Service, an agency of the United States Department of Commerce. Theodore Fathauer and Richard Thoman are GS-13 Lead

Forecasters at the National Weather Service Forecast Office in Fairbanks, Alaska. Robin Fox and Laurie Nisbet are GS-12 General Forecasters at the National Weather Service Forecast Office in Spokane, Washington. Edward Hogan is a GS-12 Aviation Forecaster at the NWS' Center Weather Service Unit, which is collocated at the FAA's Air Route Traffic Control Center in Islip, New York.

In 1978, Congress enacted the Federal Employee Part-Time Career Employment Act of 1978, Pub. L. No. 95-437, 5 U.S.C. § 3401 et seq., in order to provide opportunities for Federal employees to engage in "job-sharing" or other part-time employment opportunities. The Act requires each Federal agency to establish a part-time career employment program "to promote part-time career employment opportunities at all grade levels." 5 U.S.C. § 3402. The Act defines "part-time career employment" as 16 to 32 hours a week that is other than "employment on a temporary or intermittent basis." 5 U.S.C. § 3401(2).

On August 22, 2004, the National Weather Service approved an arrangement whereby Theodore Fathauer and Richard Thoman could share a Lead Forecaster position at the Fairbanks Forecast Office. Thoman decl. ¶ 4 (Appendix at 5). NWS forecasters at Fairbanks and elsewhere

monitor the weather, prepare forecasts and issue severe weather warnings on a continuous basis. In order to man the forecast office 24 hours a day, seven days a week, forecasters at Fairbanks rotate through a cycle of day, evening and midnights shifts, on varying days of the week. NWS forecasters typically work 10 eight-hour shifts during each two-week pay period, for a total of 80 hours. Thoman decl. ¶¶ 2,3 (Appendix at 4-5). As a result of the job sharing arrangement, Fathauer and Thoman are each scheduled for 5 eight-hour shifts a pay period. Thoman decl. ¶ 5 (Appendix at 5).

On November 26, 2006, the National Weather Service approved a "job-share partnership agreement" whereby Robin Fox and Laurie Nisbet could share a General Forecaster position at the Spokane Forecast Office. Fox decl. ¶ 4 (Appendix at 9). As part of this job-sharing agreement, Fox is scheduled to work 40% of the eight-hour shifts typically worked by a full-time forecaster (for a total of 32 hours each two-week pay period), and Nisbet is scheduled to work 60% of the shifts (for a total of 48 hours every two weeks). Fox decl. ¶ 5 and exhibit (Appendix 9, 12-13).

Although they work fewer shifts than their colleagues, Fathauer, Thoman, Nisbet and Fox are still periodically and routinely scheduled to

work on Sundays. Thoman decl. ¶ 6 (Appendix at 6, 7); Fox decl. ¶ 7 (Appendix at 10).

Since October 2005, plaintiff Hogan and another forecaster at the Islip Center Weather Service Unit have also shared one full-time forecaster position through a job sharing agreement. Hogan decl. ¶ 3 (Appendix at 21). The Center Weather Service Units at the Islip Air Route Traffic Control Center and elsewhere operate 16 hours a day, seven-days a week, 365 days a year, in order to provide timely forecasts and warnings to the air traffic controllers and air traffic management personnel. Two NWS forecasters are regularly assigned to work eight hour shifts each Saturday and Sunday at the CWSUs. Hogan decl. ¶ 4 (Appendix at 21). Since he began working part-time in October 2005, Hogan has worked most weekends, and the other part-time forecaster has worked weekday shifts.

Federal employees who are covered by the General Schedule are entitled to a 25% pay differential when they are scheduled to work on a Sunday. Title 5, section 5546(a) states that:

> An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work as defined by section 5542(a) of this title a part of which is performed on Sunday is entitled to pay for the entire period of

> service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

Each of the plaintiffs regularly received Sunday premium pay when they were full-time employees. However, once they began their job-sharing or part-time work schedule, the National Weather Service ceased paying them Sunday premium pay for their regularly scheduled Sunday shifts in reliance on an Office of Personnel Management regulation which, unlike the statute, limits the payment of Sunday differential to full-time employees. This OPM regulation, found at 5 C.F. R. § 550.171(a), reads in relevant part:

> A *full-time* employee is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work. . .

(emphasis added).

It was not OPM's idea to limit eligibility for Sunday differential to full-time employees. Immediately after Congress enacted the Sunday premium pay entitlement for General Schedule employees in the "Federal Salary and Fringe Benefits Act of 1966," Pub. L. 89-504, 80 Stat. 288, OPM proposed a Federal Personnel Management Letter which would have extended Sunday premium pay to part-time as well as full-time employees.

However, in an October 19, 1966 letter, a copy of which is included in the appendix to this brief, the Comptroller General "suggest[ed]" that OPM limit Sunday premium pay to full-time employees. The Comptroller General conceded that "the literal language" of Pub. L. No. 89-504 "does not restrict the benefits in question to full-time employees." However, the Comptroller General posited that because the legislative history of Pub. L. No. 89-504 indicated a general Congressional intent to extend to General Schedule employees "the same premium pay for Sunday granted to postal employees in 1965," and since only "regular employees" of the Postal Service were granted Sunday premium pay, Congress must have intended to limit the payment of Sunday differential to only those General Schedule employees who work a full-time, five day workweek despite "the literal language" of the statute. 46 Comp. Gen. 337, 339. OPM has followed the Comptroller General's convoluted advice ever since.

## ARGUMENT

### I. The plain language of 5 U.S.C. § 5541 and §5546(a) entitles Plaintiffs to Sunday differential.

There is no basis in any statutory language to limit Sunday differential to full-time employees. The plain language of Title 5 entitles plaintiffs and other part-time employees to Sunday differential.

Section 5546(a) provides premium pay to "[a]n *employee* who performs work during a regularly scheduled 8-hour period of service" on Sunday. (emphasis added). "Employee" is defined in Subchapter V, "Premium Pay" of Chapter 55, "Pay Administration" of Title 5. "For the purposes of this subchapter," (which includes § 5546), "'employee' means . . . an employee in or under an Executive agency," with certain exclusions, none of which pertain to part-time work status. 5 U.S.C. § 5541.

Similarly, the general definition of "employee" for Title 5 of the U.S. Code does not differentiate between full-time and part-time employees. Title 5 U.S.C. § 2105(a) reads in pertinent part:

> For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is–
>
> (1) appointed in the civil service by one of the following acting in an official capacity–

(A) the President;
(B) a Member or Members of Congress, or the Congress;
(C) a member of a uniformed service;
(D) an individual who is an employee under this section;
(E) the head of a Government controlled corporation; or
(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

The original language of what is now § 5546(a) read slightly differently than it does today. Section 405( c ) of the Federal Salary and Fringe Benefits Act of 1966, Pub. L. No. 89-504, which was originally codified as 5 U.S.C. § 921(a), read:

> Any regularly scheduled eight-hour period of service which is not overtime work . . . any part of which is performed [on Sunday] shall be compensated . . . at the rate of basic compensation of the officer or employee performing such work plus premium compensation at rate equal to 25 per centum of his rate of basic compensation.

This language was modified for stylistic purposes by Pub. L. No. 90-83, following a recodification of Title 5. “”[T]his bill makes no changes in the substance of existing law. . . Minor changes in phraseology are made for consistency and to conform to the style of title 5.” S. Report No. 482, 1967 U.S.C.C.A.N. 1538, 1541. However, the Comptroller General acknowledged in his letter of October 19, 1966 that the plain language of the statute even as originally worded entitled part-time employees to Sunday differential. He wrote:

> While the literal language of subsections 405( c ) and 405(f) of Public Law 89-504 does not restrict the benefits in question to full-time employees, we believe the legislative history . . . support the view that only full-time employees were intended to be covered thereby and, therefore, we conclude that part-time employees are not entitled to premium pay for Sunday work.

Once the Comptroller General saw that the plain language of § 5546 “does not restrict the benefits in question to full-time employees,” it was error to rummage through the legislative history.

> If the language of the statute is clear and its meaning unambiguous, that is the end of our inquiry. The plain meaning is conclusive, and it is erroneous to explore the legislative history in pursuit of alternative meanings.

*Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007)(citations omitted). “As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well.” *Snyder v. Nicholson,* 489 F.3d 1213, 1217 (Fed. Cir. 2007)(citations omitted). “If the statute is unambiguous, our inquiry is at an end; we must enforce the congressional intent embodied in that plain wording.” *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004).

Furthermore, as will be explained in the next section of this brief, the Comptroller General misread the legislative history when he determined that “only full-time employees were intended to be covered” by Section 405 ( c ) of Pub. L. No. 89-504.

## II. The legislative history of Pub. L. No. 89-504 does not indicate an intent to limit Sunday differential to full-time employees.

The legislative history reveals a general intent to extend to other civil service employees the Sunday premium pay granted to Postal employees the previous year, but it makes no mention of limiting such premium pay to full-time employees. Even assuming that Congress sought to limit Sunday premium pay to only those categories of Postal employees who were

entitled to it, the legislation granting Postal employee Sunday differential made a distinction between "regular" and "substitute" employees, and not between "full-time" and "part-time" career employees.

Section 5(b) of the Federal Employees Salary Act of 1965, Pub. L. No. 89-301, 79 Stat. 1114, (former 39 U.S.C. § 3573(e)), granted 25% Sunday differential to "[e]ach *regular* employee" of the Postal Service "whose regular work schedule includes an eight-hour period of service" on any part of a Sunday. (Emphasis added). Congress specifically exempted "substitute" employees from this entitlement. § 5( c), 79 Stat. 1116, (former 39 U.S.C. § 3575( c )). The Senate Report accompanying this act explains the distinction between "regular" employees, who were entitled to this and other premium pay entitlements, and "temporary substitutes," who were not. "Substitute employees," explained the Report, are those "whose workweek depends on the workload." 1965 U.S.C.C.A.N. 3817, 3821.

Thus, Congress specifically exempted certain Postal Service employees from entitlement to Sunday differential in the language of the law itself; there is no comparable exclusion in the language of Pub.L. No. 89-504. The language of the statute itself is the best indication of legislative intent. *Lykes Bros. S.S. Co., Inc. v. United States*, 513 F.2d 1342, 1349 (Cl.

Ct. 1975). Moreover, even if Congress did intend the same exclusion, it was of “temporary substitutes” rather than part-time career employees, such as plaintiffs. The Comptroller General mistakenly conflated the two.

## III. Denial of Sunday differential to part-time career employees is contrary to the intent of the Federal Employee Part-time Career Employment Act because it penalizes rather than promotes part-time employment.

The object of the Part-time Career Employment Act is to “promote part-time career employment,”(5 U.S.C. § 3403(a)(1)), not to penalize it - as does the Government’s interpretation of 5 U.S.C. § 5546(a).

Congress found that “part-time permanent employment . . . provides parents opportunities to balance family responsibilities with the need for additional income” and “benefits students” who are pursuing higher education. 5 U.S.C. § 3402(a)(2)(C),(D). Congress also found that part-time career employment also “benefits the Government, as an employer, by increasing productivity and job satisfaction, while lowering turnover rates and absenteeism, offering management more flexibility in meeting work requirements and filling shortages in various occupations.” 5 U.S.C. § 3402(a)(2)(E). Both of these goals are furthered by promoting plaintiffs’ part-time employment with the NWS. Hogan and Fox have gone from full-

time to part-time employment so that they can continue their careers while providing child care and supervision. Hogan decl. ¶ 3 (Appendix at 21); Fox decl. ¶ 4 (Appendix at 4). Thoman and Fathauer are using their part-time schedules to obtain graduate education. Thoman decl. ¶ 4 (Appendix at 4). The NWS benefits by retaining highly experienced forecasters. (For example, Fox has worked for the NWS for over 15 years; Thoman has 25 years experience as a forecaster. Fox decl. ¶ 1(Appendix at 8); Thoman decl. ¶ 1 (Appendix at 4)). As noted in the "Job Share Partnership Agreement" which Fox and Nisbet entered into with the NWS,

> Both job sharers start with solid and lengthy experience forecasting in the region . . . The implementation of this job share position will allow the agency to retain the meteorological and regional expertise of two experienced forecasters. This will also allow greater flexibility in scheduling. Because two forecasters fill one position, impacts on the forecast staff and management caused by leave, training, severe weather and IMET deployment would be lessened, as Laurie Koch [Nisbet] and Robin Fox have agreed to work some shifts in the other's absence. This means fewer operational shifts would need to be worked by management or other forecasters.

See pages 3-4 of November 1, 2006 Job Share Partnership Agreement, attached to declaration of Robin Fox. (Appendix at 13-14). Denial of Sunday differential to plaintiffs undermines the goals of the Federal

Employee Part-time Career Employment Act because it discourages the plaintiffs from continuing their part-time career employment; discourages other current Federal employees from seeking part-time career employment; and discourages others who would benefit from part-time employment from seeking careers with the Federal government.

**CONCLUSION**

For the foregoing reasons, the plaintiffs' motion for summary judgment as to liability should be granted.

Respectfully submitted,

/s/

RICHARD J. HIRN
General Counsel
National Weather Service Employees Organization
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812