No. 07-279C
(Judge Baskir)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

THEODORE FATHAUER et al.,

Plaintiffs
v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND CROSS-MOTION FOR SUMMARY JUDGMENT AND APPENDIX**

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

March 10, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

Statement Of The Issue . . . . . . . . . . 1

Statement Of The Case . . . . . . . . . . 2

I. Factual Background . . . . . . . . . . 2

II. Statutory And Regulatory Background . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 6

I. Standard of Review . . . . . . . . . . 6

II. Part-Time Federal Employees Are Not Entitled To Receive Sunday Premium Pay . . . . . . . . . . 6

A. The Plain Language Of 5 U.S.C. § 5546(a) Does Not Precisely Address The Issue Of Whether Part-Time Federal Employees Are Entitled To Receive Sunday Premium Pay . . . . . . . . . . 7

B. OPM's Regulatory Interpretation Of 5 U.S.C. § 5546(a) Is Reasonable And Entitled To Deference . . . . . . . . . . 9

III. The Spirit and Purpose Of The Part-Time Career Employment Act Does Not Require The Court To Overturn OPM's Regulation . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 6

Cathedral Candle Co. v. United States Int'l Trade Comm'n,
400 F.3d 1352 (Fed. Cir. 2005) . . . . . 10

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984) . . . . . 7, 10

Timex V.I., Inc. v. United States,
157 F.3d 879 (Fed. Cir. 1998) . . . . . 8

United States v. Mead Corp.,
533 U.S. 218 (2001) . . . . . 10

46 Comp. Gen. 337, 338 (October 19, 1966) . . . . . 4, 5, 6, 9

## STATUTES, RULES, REGULATIONS, LEGISLATIVE HISTORY

5 U.S.C. § 2105 . . . . . 2, 3

5 U.S.C. § 3401 . . . . . 14

5 U.S.C. §5541 . . . . . 2, 8, 9

5 U.S.C. § 5546 . . . . . 1, 2, 6, 7, 8, 13, 14

5 U.S.C. § 5548 . . . . . 3, 11

5 C.F.R. § 550.171 . . . . . 3, 7, 11

1965 U.S.C.C.A.N. 3817 . . . . . 12

1966 U.S.C.C.A.N. 2495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THEODORE FATHAUER et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-279C |
| v. | ) | |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND CROSS-MOTION FOR SUMMARY JUDGMENT AND APPENDIX**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter judgment in its favor with respect to plaintiffs' complaint and deny the Motion For Summary Judgment of plaintiffs Theodore Fathauer, Robin Fox, Edward K. Hogan, Jr., Laurie R. Nisbet, and Richard Thoman (collectively, the "plaintiffs"), upon the grounds that the Government is entitled to judgment as a matter of law.

Statement Of The Issue

Whether the Office of Personnel Management's regulatory interpretation of 5 U.S.C. § 5546(a) is arbitrary, capricious, or manifestly contrary to the statute.

## Statement Of The Case

I. Factual Background

The parties agree upon the only material fact in this case -- plaintiffs are part-time Federal employees. For purposes of this case, details of each plaintiff's employment beyond the fact that he or she is a part-time Federal employee do not affect the outcome; the plaintiffs are not entitled to receive the Sunday premium pay they seek because of their status as part-time Federal employees.

II. Statutory And Regulatory Background

Section 5546 of Title 5 of the United States Code (the "Sunday premium pay statute"), provides in pertinent part:

> An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work as defined by section 5542(a) of this title a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

5 U.S.C. § 5546(a). The definitional statute governing section 5546 states that an "employee" is "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A).[1]

---

[1] Plaintiffs have also pointed to 5 U.S.C. § 2105, another definitional

(continued...)

Congress expressly delegated to the Office of Personnel Management ("OPM") the authority to implement rules and regulations to administer the Sunday premium pay statute. See 5 U.S.C. § 5548(a) ("The Office of Personnel Management may prescribe regulations, subject to the approval of the President, necessary for the administration of this subchapter . . . ."). Pursuant to that authority, OPM promulgated 5 C.F.R. § 550.171 (the "Sunday premium pay regulation"), which provides that "[a] full-time employee is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work (as defined in § 550.103)." 5 C.F.R. § 550.171(a).

OPM promulgated the Sunday premium pay regulations shortly after Congress enacted the Sunday premium pay statute. During the process of

---

[1](...continued)
statute under Title 5, for an alternative definition of "employee." Brief In Support Of Plaintiffs' Motion For Summary Judgment ("Pl. Br."), at 7. However, that statute specifically provides that it is applicable only to the extent it is not modified elsewhere in the title. See 5 U.S.C. § 2105(a) ("'employee', except as otherwise provided by this section or when specifically modified, means . . . ."). Therefore, the definition at issue here is the one found at 5 U.S.C. § 5541.

drafting the regulation, the Chairman of the Civil Service Commission[2] wrote to the Comptroller General seeking guidance as to whether the then-recent amendments to the Federal Employees Pay Act of 1945 would support a regulation operating so "that an employee with a regularly prearranged tour of less than 40 hours a week is entitled to premium pay for Sunday work." 46 Comp. Gen. 337, 338 (October 19, 1966). The chairman also specifically stated that, in his view, "language of the statute does not limit the coverage of such provisions to full-time employees." Id.

The Comptroller General disagreed. Citing the law's legislative history, the Comptroller General suggested that, notwithstanding the unqualified use of the term "employee" in the statute, Congress intended only to extend Sunday premium pay to Federal employees in the same manner it had granted Sunday premium pay to employees of the United States Postal Service the year before -- full-time employees may receive it, but part-time employees may not. Id. The Comptroller General referred specifically to Senate Report No. 1187, 89th Cong., 2d sess., which states:

---

[2] The Civil Service Commission is the predecessor to OPM. The United States Civil Service Commission was established by the Pendleton Civil Service Reform Act of 1883. The commission was abolished and replaced by OPM on January 1, 1979 pursuant to the Civil Service Reform Act of 1978 and Reorganization Plan No. 2 of 1978 (43 F.R. 36037, 92 Stat. 3783).

> Section 405 applies to classified and wage board employees a significant liberalization granted postal employees in 1965. This section requires a premium of 25 percent of base pay for any employee ***whose regularly scheduled 5-day work-week*** includes Sunday. The premium will be paid for the entire 8-hour period of service regardless of the numbers of hours which actually occur on Sunday. ***This is identical to the provisions for regular postal employees enacted last year***.

46 Comp. Gen. at 338 (quoting 1966 U.S.C.C.A.N. 2495, 2498 (emphasis added)). The Comptroller General also cited tesimony from the hearings before the Committee on Post Office and Civil Service:

> The House bill, H.R. 14122, adds new * * * Sunday pay benefits for most Federal employees. Equity allows no alternative but to concur in the proposals to extend to additional groups * * * premium pay at 25 percent of base rates for nonovertime work on Sunday. * * * ***Congress last year prescribed premium pay for nonovertime Sunday work of postal employees; it is equitable to extend the same policy to other salaried employees and to those paid under wage-board schedules***."

Id. (quoting Hearings before the Committee on Post Office and Civil Service, United States Senate, 89th Cong., 2d sess., on H.R. 14122, held on April 20, 21, 22, 25, 26 and 27, 1966, at 4 (emphasis added)). Based upon these expressions of Congressional intent in the legislative history, the Comptroller General recommended that:

> While the literal language of subsections 405(c) and 405(f) of Public Law 89-504 does not restrict the benefits in question to full-time employees we believe the legislative history previously referred to supports the view that only full-time employees were intended to be covered thereby and, therefore, we conclude that part-time employees are not entitled to premium pay for Sunday work.

Id. at 339. OPM adopted this rationale when it promulgated its regulation, which provides Sunday premium pay for full-time Federal employees, but not part-time Federal employees.

## ARGUMENT

### I. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### II. Part-Time Federal Employees Are Not Entitled To Receive Sunday Premium Pay

The plaintiffs' case is essentially a plea to the Court to accept their interpretation of 5 U.S.C. § 5546(a) over that of OPM. Plaintiffs ignore the fact that OPM -- the agency charged with administering the Federal pay statute at issue here -- has promulgated a regulation that limits the

payment of Sunday premium pay to full-time Federal employees and is based upon OPM's understanding of Congress' intent in passing 5 U.S.C. § 5546. Indeed, plaintiffs attempt to minimize this regulation in their brief by asserting that "it was not OPM's idea to limit eligibility for Sunday differential to full-time employees." Pl. Br. at 5. This is, however, not an accurate portrayal of the statutory and regulatory scheme. OPM promulgated its Sunday premium pay regulation shortly after section 5546 was enacted. In the process of drafting that regulation, OPM consulted the Comptroller General for his opinion upon the precise issue that the plaintiffs raise here, and the Comptroller General articulated a reasonable interpretation of section 5546 that OPM adopted as its own when it promulgated 5 C.F.R. § 550.171(a).

Thus, this case asks whether the regulation of the agency charged with enforcing the statute is entitled to Chevron deference.

A. The Plain Language Of 5 U.S.C. § 5546(a) Does Not Precisely Address The Issue Of Whether Part-Time Federal Employees Are Entitled To Receive Sunday Premium Pay

To determine whether an agency's interpretation and application of a particular statute is "in accordance with law," the Court must undertake the two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Resources

Defense Council, Inc., 467 U.S. 837 (1984). Under the first step, the Court reviews the agency's construction of a statutory provision to determine whether "Congress has directly spoken to the precise question at issue." Id. at 842. "To ascertain whether Congress had an intention on the precise question at issue, [the Court] employ[s] the 'traditional tools of statutory construction.'" Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998). "The first and foremost 'tool' to be used is the statute's text, giving it its plain meaning." Id. (citations omitted). Beyond the statute's text, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history." Id. (citations omitted).

In this case, the precise question is whether the Sunday premium pay statute applies to part-time Federal employees. Despite plaintiffs' remonstrances, the statute does not precisely address whether part-time Federal employees are entitled to Sunday premium pay. To avoid this conclusion, plaintiffs argue that Congress' omission of "full-time" as a modifier of "employee" from the text of both 5 U.S.C. § 5546(a) and 5 U.S.C. § 5541 mandates the payment of Sunday premium pay to part-time Federal employees. Pl. Br. at 7-10. Implicit in this argument is the

false assumption that Congress intended to extend Sunday premium pay to all Federal employees. See 5 U.S.C. §5541(2)(i)-(xvii) (listing seventeen separate exclusions from the statutory definition of "employee"). Furthermore, the statute's general definition of the term is circular, unhelpfully defining "employee" as "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A). In short, the statute does not clearly state whether it is applicable to part-time Federal employees.

As described above in the Statement Of The Case, OPM attempted to clarify this ambiguity by promulgating a regulation to govern the payment of Sunday premium pay. In formulating that regulation, OPM sought the advice of the Comptroller General, who highlighted passages in the statute's legislative history demonstrating Congress' intent to grant the benefit to "employee[s] whose regularly scheduled 5-day work-week includes Sunday," and that the benefits encompassed by the new amendments were "identical" to those passed for the Postal Service just the year before. 46 Comp. Gen. at 339.

B. OPM's Regulatory Interpretation Of 5 U.S.C. § 5546(a) Is Reasonable And Entitled To Deference

Where Congress has expressly charged an agency with the administration of a statute, an agency's regulations promulgated for that

purpose "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984). "Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Id. at 844; see also United States v. Mead Corp., 533 U.S. 218, 230 (2001) (holding that where Congress has indicated that an agency shall administer a statute, a court reviewing an agency's actions "is obliged to accept the agency's position if Congress has not previously spoken to the point at issue, and the agency's interpretation is reasonable"); Cathedral Candle Co. v. United States Int'l Trade Comm'n, 400 F.3d 1352, 1362 (Fed. Cir. 2005) (noting that Chevron "requires the court to defer to the agency's interpretation if 'the agency's answer is based on a permissible construction of the statute'") (internal citations omitted). An "administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." Mead, 533 U.S. at 226-27.

It is undisputed that Congress expressly delegated to OPM the responsibility to administer the Sunday pay statute. See 5 U.S.C. § 5548(a) ("The Office of Personnel Management may prescribe regulations, subject to the approval of the President, necessary for the administration of this subchapter . . . ."). As a result of that express delegation, OPM promulgated regulations for the general administration of the statute, and those regulations are entitled to Chevron deference.

As explained above, the OPM regulation at 5 C.F.R. § 550.171 is based upon the rationale outlined by the Comptroller General in his October 19, 1966 decision upon the very question that the plaintiffs pose here. Plaintiffs argue that the Comptroller General's decision (and therefore, OPM's decision as well) is incorrect, stating that "even if Congress did intend the same exclusion, it was of 'temporary substitutes' rather than part-time career employees, such as plaintiffs. . . . [and] the Comptroller General mistakenly conflated the two." Pl. Br. at 11-12.

Plaintiffs' argument makes one false assumption and one critical omission. First, plaintiffs incorrectly assume that, in 1965, the Postal Service employed "part-time career employees." Plaintiffs cite nothing, and we are aware of nothing, supporting this assumption. To the contrary, the

Senate Report cited by the plaintiffs in their explanation of the Postal Service's regular/substitute employee classes suggests that there was no full- and part-time employee distinction by that name in the 1965 Postal Service, and the regular/substitute distinction was the functional equivalent. "Regular" Postal Service employees not only received a regular schedule of work, as plaintiffs highlight in their brief, Pl. Br. at 11, but they also had "an advance-scheduled basic workweek of five 8-hour days." 1965 U.S.C.C.A.N. 3817, 3821. In other words, "regular" Postal Service employees were full-time employees.

"Substitute" Postal Service employees, on the other hand, did not have a regular work schedule, id., and also typically did not work a full 40-hour workweek. Defendant's Appendix ("DA") at 2 (H.R. Rep. 89-792 at 22) (noting that, under the high volume of mail being handled by the Postal Service in the mid-1960's, "[n]o longer were substitutes intermittent or part-time workers."). Hence, "substitute" Postal Service employees in 1965 were generally regarded as part-time employees.

Therefore, the Comptroller General's conclusion that Congressional statements indicating an intent to pass a pay package "identical" to that provided to the Postal Service in 1965 meant that part-time employees

should not receive Sunday premium pay is a rational and reasonable conclusion. The reasonableness of the Comptroller General's conclusion is further bolstered by the legislative history directly referencing a full-time employment schedule in the statement that the Sunday premium pay statute "requires a premium of 25 percent of base pay for any employee ***whose regularly scheduled 5-day work-week*** includes Sunday." 1966 U.S.C.C.A.N. 2495, 2498 (emphasis added).

OPM's interpretation of 5 U.S.C. § 5546(a) has been in force for more than 40 years. In that time, individuals have posed the same question that plaintiffs pose here, and each time OPM has stood by its reasonable interpretation of the statute. See DA 4-10 (correspondence from OPM addressing questions identical to plaintiffs'). Moreover, members of Congress have inquired about the eligibility of part-time Federal employees for Sunday pay. DA 6 (October 12, 1977 letter to Representative M. Holt); DA 8(June 26, 1974 letter to Representative G. Gude); DA 9 (July 10, 1973 letter to Representative S. Matsunaga). In all this time, OPM's interpretation has remained law, and part-time Federal employees have not been eligible to receive Sunday premium pay.

The rationale underlying the OPM regulation, first articulated by the

Comptroller General and based upon Congress' clear expression of its intent in the legislative history of the Sunday premium pay statute, is rational and reasonable. OPM has adopted a permissible construction of the Sunday premium pay statute, and it should not be disturbed by this Court.

III. The Spirit and Purpose Of The Part-Time Career Employment Act Does Not Require The Court To Overturn OPM's Regulation

Finally, plaintiffs argue that denying part-time Federal employees Sunday premium pay under 5 U.S.C. § 5546(a) would undermine the general purpose and spirit of the Part-Time Career Employment Act, 5 U.S.C. § 3401 et seq., and may cause the failure of the part-time Federal employment program. Pl. Br. at 12-14.

This aspect of plaintiffs' argument is no more than a policy argument that is more appropriately made to Congress than the Court. Plaintiffs do not contend, nor can they, that the Part-Time Career Employment Act contains a money-mandating provision that compels the Court to adopt their interpretation of 5 U.S.C. § 5546. The Court should decline this invitation to legislate from the bench and reject plaintiffs' argument.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's Motion for Summary Judgment and grant our Cross-Motion for Summary Judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick (by Kirk T. Manhardt)
MARK A. MELNICK
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

March 10, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on March 10, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT AND APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak
DEVIN A. WOLAK

**Theodore Fathauer, et al. v. United States**
Fed. Cl. No. 07-279C

## Index to Defendant's Appendix

Document — Page Number

Excerpts from H.R. Rep. 89-792 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA 1

7/30/1979 correspondence from R. Weissenhorn (OPM) to S. Roman (Commerce) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA 4

10/12/1977 correspondence from R. Weissenhorn (OPM) to Hon. M. Holt, U.S. Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA 6

6/26/1974 correspondence from K. Newhall (OPM) to Hon. G. Gude, U.S. Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA 8

7/10/1973, correspondence from K. Newhall (OPM) to Hon. S. Matsunaga, U.S. Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA 9

89TH CONGRESS 1st Session } HOUSE OF REPRESENTATIVES { REPORT No. 792

# GOVERNMENT EMPLOYEES SALARY COMPARABILITY ACT

AUGUST 16, 1965.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. UDALL, from the Committee on Post Office and Civil Service, submitted the following

## REPORT

together with

## MINORITY VIEWS

[To accompany H.R. 10281]

The Committee on Post Office and Civil Service, to whom was referred the bill (H.R. 10281) to adjust the rates of basic compensation of certain officers and employees in the Federal Government, to establish the Federal Salary Review Commission, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

### PURPOSE

The purpose of this legislation is to honor—through moderate but timely and meaningful salary adjustments—the pledges made by the committee, by the Congress, and by two Presidents of the United States that Federal salary rates shall be comparable with those paid by private enterprise for the same levels of work.

This principle of comparability was strongly reaffirmed by President Lyndon B. Johnson in his message on pay increases, submitted to the Congress May 12, 1965.[1] He declared that—

> We do not have two standards of what makes a good employer in the United States: One standard for private enterprise and another for the Government. A double standard which puts the Government employee at a comparative disadvantage is shortsighted. In the long run, it costs more.

[1] Printed as H. Doc. 170, 89th Cong.

50-006 O—65——1

I urge prompt consideration of these proposals. Their results will more than justify their costs.

LYNDON B. JOHNSON.

THE WHITE HOUSE, *May 12, 1965.*

II

OFFICE OF THE POSTMASTER GENERAL,
*Washington, D.C., May 25, 1965.*

Hon. JOHN W. MCCORMACK,
*Speaker of the House of Representatives,*
*Washington, D.C.*

DEAR MR. SPEAKER: In furtherance of the President's message of May 12, 1965, I am sending you herewith a legislative proposal providing for premium pay under specified conditions to certain employees in the postal field service, together with a statement of the purpose and need for this proposed legislation.

The Bureau of the Budget has advised that enactment of this legislation would be consistent with the administration's objectives.

Sincerely yours,

JOHN A. GRONOUSKI,
*Postmaster General.*

STATEMENT OF PURPOSE AND NEED

The law which regulates the work schedules and premium pay practices for excess work hours for postal employees is no longer equitable. When the present law (69 Stat. 88–130) was enacted June 10, 1955, sufficient personnel generally could be made available to minimize excess employment of postal personnel. Furthermore, postal substitutes for the most part were used in the manner implicit in their titles; i.e., as temporary replacements for absent regular employees or as auxiliary employees for peak workload periods. Over the past years, however, the ever-increasing postal workload was not always accompanied by a proportionate increase in manpower and in the last few years the discrepancy between workload and manpower availability reached the point where long and continuous hours of work per employee in excess of 40 hours each week became the common practice in many post offices. Since the use of "regulars" for excess work is limited in that the law requires the granting of a compensatory day off within 5 days for work performed on a Saturday or Sunday, substitutes who are not under such restrictions fast became the work horses of the department. No longer were substitutes intermittent or part-time workers. And, correspondingly, the matter of premium pay for substitutes was no longer academic. This dormant inequity; i.e., straight time pay to substitutes regardless of the number of hours worked has become a very real problem. The law pertaining to premium compensation for excess work hours in the light of considerable and continuous employment for such excess work hours should be modernized.

Under the current law the Postmaster General is not authorized to apply premium pay practices for postal rank and file employees that the Federal Government now requires of industry and for employees under the Classification Act. The law requires that postal field

service substitute employees be paid for all hours of work performed at their straight time hourly rate of pay.

The proposed legislation is to grant the Postmaster General the authority to pay for overtime work at premium rates to rank and file employees (regulars as well as substitutes) when the specified conditions are met as well as to certain supervisory personnel. The keystone to Federal premium pay practices is first the 40-hour workweek, and second, work in excess of 8 hours in 1 day. The legislation which has been developed follows these precepts by prescribing premium pay for those categories of employees (1) who work in excess of their schedule to the extent a schedule of 8 hours a day or 40 hours a week can be prescribed in advance, or (2) as a minimum for all categories, premium pay for work performed in excess of 40 hours in 1 week. Equity for all rank and file employees is thus achieved around the base of 40 hours a week.

1. Regular: premium pay for required work in excess of the regular schedule, i.e., over 8 hours in 1 day or for a sixth or seventh day of work.
2. Hourly rate regular: premium pay for required work in excess of 8 hours in 1 day or 40 hours in 1 week.
3. Substitute: premium pay for required work in excess of 40 hours in 1 week.

The distinctive premium pay treatment for the above three groups is necessary because of the nature of their employment. Regular employees will each have a previously established schedule of 40 hours a week consisting of five 8-hour days; hourly rate regular employees will each have a previously established schedule, consisting of a maximum of 40 hours a week though each day may be less than 8 hours; substitute employees will not have a schedule and as a result may work 10 hours on one day and only 6 hours the next.

For personnel in salary levels PFS–8 and higher the proposed legislation provides liberalized benefits.

OFFICE OF THE POSTMASTER GENERAL,
*Washington, D.C., June 28, 1965.*

Hon. MORRIS K. UDALL,
*Chairman, Subcommittee on Compensation of the Committee on Post Office and Civil Service, House of Representatives, Washington, D.C.*

DEAR MR. CHAIRMAN: This is in response to your letter of June 11, 1965, in which you asked for certain data and observations regarding compensating employees for overtime work.

(*a*) Proposal to pay substitutes time and one-half for all work performed in excess of 8 hours a day. Apart from the fact that this proposal would cost about $17.4 million, we see no justification for the proposal in terms of equity as between postal employees. At first, it would appear that since we recommended a change in law under which regulars would be paid at time and on-half for work in excess of 8 hours in 1 day as well as for work in excess of 40 hours in 1 week that it would be only fair to provide the same benefit to substitutes. Actually, substitutes have equity with regulars under our recommended overtime plan for substitutes, i.e. after 40 hours in a week. Since regulars are to be scheduled for 5 days a week of 8 hours each, any overtime they work inevitably is overtime after 40. For regulars, then, the requirement of overtime after 8 has meaning only in those

550-S1-10

DWB

JUL 30 1979

Mr. Stephen J. Roman
Classification Officer
U.S. Department of Commerce
Washington, D.C. 20230

Dear Mr. Roman:

This is in reply to your letter of April 25, 1979, concerning the entitlements of part-time and intermittent employees to Sunday premium pay for extended tours of duty at sea. Please excuse our delay in responding.

As stated in subchapter S1-10c(1) of book 550 of FPM Supplement 990-2: "part-time employees are not entitled to premium pay for Sunday work, only full-time employees are so entitled . . . ." This instruction is based on a decision of the Comptroller General, 46 Comp. Gen. 330 (1966), interpreting the Federal Salary and Fringe Benefits Act of 1966, Public Law 89-504, which established Sunday premium pay for General Schedule and prevailing rate employees. The Civil Service Commission had submitted a proposed FPM letter to the Comptroller General which would have provided that part-time employees be eligible for Sunday premium pay. This provision was specifically rejected by the General Accounting Office which stated: "we believe the legislative history [of Public Law 89-504] . . . supports the view that only full-time employees were intended to be covered thereby and, therefore, we conclude that part-time employees are not entitled to premium pay for Sunday work." Therefore, it is clear that a part-time or intermittent employee may not be paid Sunday premium pay.

The memorandum which you enclose from the National Oceanic and Atmospheric Administration (NOAA) suggests, however, that part-time and intermittent employees should not be barred from receiving Sunday premium pay if they work full-time for extended tours of duty. NOAA believes that a decision of the Comptroller General, 57 Comp. Gen. 82 (1977), which holds that intermittent employees are entitled to earn leave in certain situations, establishes the principle that, as NOAA states: "the designation of a position and wording of the appointment is not conclusive of entitlements to benefits when the actual service differs from that of the appointment." While this argument has some merit, we do not believe that payment of Sunday premium pay to part-time and intermittent employees can be authorized under the current decisions of the Comptroller General.

The reason that intermittent employees do not earn leave is because of the exclusion in 5 U.S.C. 6301(2)(B)(ii) from the leave system "of a part-time employee who does not have an established regular tour of duty during the administrative workweek." The distinction in the leave statute, thus, is between a part-time employee with a regular tour of duty (who would generally be considered a "part-time" employee) and a part-time employee without a regular tour of duty (who would generally be considered an "intermittent" employee). The leave statute does not distinguish between employees on the basis of their being "intermittent" or "part-time," but rather on the basis of their having or not having a regular tour of duty. Therefore, the effect of 57 Comp. Gen. 82 is simply to hold that an employee with a regular tour of duty is not subject to the exclusion in 5 U.S.C. 6301(2)(B)(ii), notwithstanding the fact that the employee is formally designated as an intermittent. However, it does not necessarily follow that a part-time employee who works a regular tour of duty of 40 hours or more for a defined period is a full-time employee for all pay administration purposes. Given the specific prohibition in 46 Comp. Gen. 330 against payment of Sunday premium pay to part-time employees, we believe that such payment may not be made unless the Comptroller General modifies or overrules the original decision.

Of course, an agency may, if it wishes, convert a part-time employee to a full-time appointment. In that case, the employee would be entitled to Sunday premium pay if part of his or her basic workweek were scheduled on a Sunday. But consideration would have to be given to the consequences of such a conversion, including the possibility that adverse action procedures may be needed if the employee is converted back to a part-time appointment.

We hope that this information is helpful to you.

Sincerely yours,

Raymond C. Weissenborn
Director
Compensation Division

7/17/79 PPA

7-19-79

PT 7/24/79

MCaviglia 7/17/79

PPT: MCaviglia/dae/7-16-79

(PAUL TRAUSE AGC)

Woodruff 7/17/79

OCT 12 1977

Fil
Bo 12550-1
1-10

Honorable Marjorie S. Holt
U.S. House of Representatives
Washington, D.C. 20515

Dear Mrs. Holt:

This is in reply to your letter of September 6, 1977, in the interest of Mr. Avery L. Coleman, concerning his comments on the lack of premium pay for Sunday work for part-time Federal employees. We can well appreciate his concern.

The applicable provision providing for premium pay for Sunday work was enacted in the Federal Salary and Fringe Benefits Act of 1966, Public Law 89-504. Section 5546(a) of title 5, U.S.C., provides that: "An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work . . . a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay." Pursuant to this statute's enactment, the Civil Service Commission formulated regulations which would have entitled part-time employees to Sunday premium pay. However, at the request of the Comptroller General's Office, the Commission sought their opinion on the proposed regulations. Their conclusion, contained in Comptroller General Letter B-159950 of October 19, 1966, was that part-time employees are not entitled to Sunday premium pay.

The enactment of the statute was intended to extend to Federal employees generally the same Sunday premium pay benefits which had previously been granted to full-time Postal employees. The Comptroller General's interpretation was based on committee reports referring to employees working five day, eight hour shifts. The law as interpreted has resulted in disparities which were apparently not foreseen at the time.

As recommended by the President's Pay Panel in its report of December 1975, and by the General Accounting Office in a subsequent report, the Civil Service Commission is undertaking a comprehensive review of various premium pay issues. The problem identified by Mr. Coleman is one of several in the area of premium pay which will be examined. We anticipate completion of this project within 24 months. Due to the fact that our study is just beginning and that some past problems have been caused by making piecemeal changes in laws, we are not in favor of the introduction of corrective legislation until such time as we can deal effectively and comprehensively with identified problems in their entirety.

I hope that this information is of assistance to you in responding to your constituent.

Sincerely yours,

for Raymond C. Weissenborn
Chief, Pay Policy Division

PPA:MRoseman:hs
PV-77-1639
Oct. 11, 1977 10/11

JUN 26 1974

Honorable Gilbert Gude
House of Representatives
Washington, D. C. 20515

Dear Mr. Gude:

This is in response to your letter of June 13, 1974, in behalf of Mrs. Margaret L. Gierszewski, a part-time Federal employee, who is concerned because she is not entitled to Sunday premium pay.

The Federal Salary and Fringe Benefits Act of 1966 provided premium pay for Federal employees who perform "work during a regularly scheduled 8-hour period of service which is not overtime work," any or all of which is performed on Sunday. The Civil Service Commission interpreted the language to include part-time work. However, the Comptroller General ruled that "while the literal language of the law does not restrict the benefits in question to full-time employees, we believe the legislative history previously referred to supports the view that only full-time employees were intended to be covered and, therefore, we conclude that part-time employees are not entitled to premium pay for Sunday work" (46 CG 337, October 19, 1966).

Although the Commission may not have agreed with the interpretation of the language, the Comptroller General is the final administrative authority on financial matters.

I regret we are unable to be more favorable in our reply. Your constituent's correspondence is returned as requested.

Sincerely yours,

Katherine Newhall, Chief
Advisory Services Office

Enclosure

PV:WJDawson:rmp
PV-74-1316
CLC 6-1-5
06/24/74

JUL 10 1973

Honorable Spark Matsunaga
House of Representatives
Washington, D.C. 20515

Dear Mr. Matsunaga:

This is in further reply to your letter of June 12, 1973, concerning questions raised by Mr. Raymond Wieckowicz, Jr., of the Service Employees' International Union Local 556.

The authority for an agency to pay a Sunday premium to Federal employees derives from sections 5544, 5546 and 5550 of title 5, United States Code. The first two sections deal with appropriated fund employees, both those paid from the statutory General Schedule and those paid under the prevailing rate Federal Wage System. The last section cited pertains to prevailing rate employees of non-appropriated fund instrumentalities.

In providing an interpretation of the application of sections 5544 and 5546 the Comptroller General, in 1966, examined the legislative history of those sections. In his decision (46 Comp. Gen. 337) the Comptroller General noted that while the language of the sections did not restrict the benefits in question to full-time employees, it was his view, based on the legislative history, that the benefits were intended only for full-time employees working the basic 40-hour workweek. The Comptroller General concluded, therefore, that part-time employees are not entitled to premium pay for Sunday work. It was this Comptroller General's decision that formed the basis for the Civil Service Commission's initial interpretation of the applicability of Sunday premium pay benefits under section 5550 to only full-time nonappropriated fund prevailing rate employees. We did, however, seek further clarification from the Comptroller General which has now been received.

In his decision B-159950, dated June 6, 1973 (copy attached), the Comptroller General held that nonappropriated fund employees of the Department of Defense and the Department of Transportation may receive Sunday premium pay only if they have basic full-time workweeks

of 40 hours, as is the case for all other wage employees. The Comptroller General cites the legislative history of P.L. 92-392 to show that "it was the intent of Congress to provide Sunday premium pay for prevailing rate nonappropriated fund employees in the same amounts and under the same conditions as such pay is authorized for other Federal prevailing rate employees."

I hope this information will assist you in responding to Mr. Wieckowicz, whose letter is returned as requested.

Sincerely yours,

Katherine Newhall, Chief
Advisory Services Office

Enclosures

PV:CPerez:pdf 7/2/73
PV-73-1184