**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

No. 07-279C
(Judge Baskir)

---

**THEODORE FATHAUER**, et al

plaintiffs,

v.

**THE UNITED STATES,**

defendant.

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

RICHARD J. HIRN
General Counsel
National Weather Service Employees
Organization
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812

attorney for plaintiffs

## I. The plain language of Sections 5541 and 5546 entitle plaintiffs and other part-time employees to Sunday premium pay.

There is nothing ambiguous about the language of § 5546(a) that would warrant deferral to the agency's interpretation. It grants all "employees" the right to earn Sunday premium pay, without limitation. The defendant's brief recognizes that the plain language of § 5546(a) entitles plaintiffs to Sunday premium pay. As the defendant noted on page 4 of its brief, the Chairman of the Civil Service Commission "specifically stated that, in his view, 'language of the statute does not limit the coverage of such provisions to full-time employees'" in his 1966 letter to OPM. Further, the defendant also notes that the Comptroller General opined that Congress did not intend to grant Sunday pay to part-time employees "notwithstanding the unqualified use of the term 'employee' in the statute." Def. brief at 4.

The defendant correctly states that "the definition [of employee] at issue here is the one found at 5 U.S.C. § 5541," which defines "employee" for the purpose of the Premium Pay subchapter of Title 5. Section 5541 broadly defines employee to include "an employee in or under and Executive agency" which certainly includes the plaintiffs. The term

"employee" is then used throughout the subchapter to grant various other premium pay entitlements, *none of which have been restricted to full-time employees* by OPM regulations or anyone else. For example, § 5542(a) specifically grants overtime pay to "employees" regardless of whether they work "full-time, part-time or intermittent tour of duty."[1] This clearly indicates that both full-time and part-time employees fall within the subchapter's definition of "employee." Section 5543 entitles "employees" to compensatory time off in lieu of overtime. Even the Comptroller General has ruled that part-time employees are entitled to compensatory time under § 5543. *In the matter of Evan J. Kemp, Jr.*, 59 Comp. Gen. 237 (February 4, 1980). Section 5545 entitles "employees" to night differential, stand-by and hazard pay. OPM regulations implementing this section do *not* exclude part-time employees from these entitlements. 5 C.F.R. §§ 550.121, 550.141; 550.902. Subsection 5546(b), which immediately follows the Sunday pay provision in subsection 5546(a), grants "employees" holiday pay. Most ironically, part-time employees are not excluded from eligibility for holiday pay under OPM regulations. 5 C.F.R. § 550.131. How can the

[1] Part-time employees can earn overtime, for example, when they work in excess of 8 hours a day, even if they do not work 40 hours a week. § 5542(a).

same word have two different meanings in the same section of the law? In summary*, the term "employee" has been interpreted by OPM to include part-time employees in every other provision of Subchapter 5 other than the subsection dealing with Sunday pay, including the subsection of § 5546 which immediately follows the Sunday pay provision.*

## II. The Office of Personnel Management's regulations are not entitled to deference.

Of course, the agency's regulations are not entitled to deference unless the statute is ambiguous. *Miller v. Dept. of the Army*, 987 F.2d 1552, 1555 (Fed. Cir. 1993). But even if Subchapter V was ambiguous, OPM's regulations are not entitled to deference because they do not reflect OPM's (or its predecessor, the Civil Service Commission's) considered construction of § 5546 contemporaneous with its enactment. *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 398-99 (Fed. Cir. 1990). Rather, OPM's predecessor's contemporaneous construction of § 5546(a) fully supports plaintiffs' entitlement, and to the extent that any ambiguity exists, the Court should defer to *that* interpretation of the statute.

As the defendant notes, immediately after enactment, the Civil Service Commission interpreted § 5546(a) to apply to part-time as well as

full-time employees. Def. brief at 4; 46 Comp. Gen. 337, 338 (October 19, 1966). The attachments to the defendant's brief demonstrate that OPM's predecessor *never* embraced the narrower construction of § 5546(a), but has felt that its hands were tied by the narrower construction of the Comptroller General instead. In a June, 1974 letter to Representative Gude, the Commission wrote that it "interpreted the language to include part-time work." It further wrote that "[a]lthough the Commission may not have agreed with the interpretation of the language, the Comptroller General is the final administrative authority on financial matters." Def. Appendix at 8. Similarly, in a 1977 letter to Representative Holt, the Commission again noted that "[p]ursuant to the statute's enactment, the Civil Service Commission formulated regulations which would have entitled part-time employees to Sunday premium pay," but that the Comptroller General thought otherwise. Def. Appendix at 6. Again, in its July 30, 1979 letter to the Department of Commerce, the Commission noted that "[t]he Civil Service Commission had submitted a proposed FPM letter to the Comptroller General which would have provided that part-time employees be eligible for Sunday premium pay," but that it was the Comptroller

General's, and not the Commission's, opinion that part-time employees were not eligible. Def. Appendix at 4.

**III. The Comptroller General misread the legislative history.**

The Comptroller General read far too much into the statement that Congress wanted to extend that same Sunday pay entitlements to civil service employees that it had previously granted Postal employees. Even assuming that this very general statement evidences a specific intent to enact the same limits on eligibility, there simply were no career part-time employees in the Postal Service.

The defendant writes that "plaintiffs incorrectly assume that, in 1965, the Postal Service employed 'part-time career employees.' Plaintiff cite nothing, and [the government] is aware of nothing, supporting this assumption." Def. brief at 11. The defendant has misread Plaintiffs' opening brief, in which plaintiffs specifically pointed out that there were no part-time employees in the Postal Service - a point with which both parties agree. Plaintiffs' brief at 10 -11. Congress denied substitute Postal

employees Sunday pay, not part-time employees.[2] As the defendant correctly notes, “there was no full-time and part-time employee distinction by that name in the 1965 Postal Service.” Therefore, the Comptroller General erroneously conflated substitute Postal Service and part-time career civil service employees. Stated another way, the Comptroller General could not rely on the Postal Service statute to conclude that Congress intended to deprive part-time career civil service employees of Sunday premium pay, simply because there were no part-time career employees in the Postal Service.

Furthermore, the exclusion of substitute employees in the Postal Service statute was specific; there is no similar exclusion language in § 5546(a). Had Congress intended to exclude some civil service employees from Sunday pay, it would have specifically done so as it did in the Postal Service act.

---

[2] Congress specifically exempted “substitute” employees from this entitlement. § 5( c), 79 Stat. 1116, (former 39 U.S.C. § 3575( c )). The Senate Report accompanying this act explains the distinction between “regular” employees, who were entitled to this and other premium pay entitlements, and “temporary substitutes,” who were not. “Substitute employees,” explained the Report, are those “whose workweek depends on the workload.” 1965 U.S.C.C.A.N. 3817, 3821.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for summary judgment as to liability should be granted and the defendant's motion for summary judgment should be denied.

Respectfully submitted,

/s/

RICHARD J. HIRN
General Counsel
National Weather Service Employees Organization
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812