No. 07-279C
(Judge Baskir)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

THEODORE FATHAUER, et al.,

Plaintiffs,
v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

April 18, 2008

Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. The Plain Language Of The Sunday Premium Pay Statute Does Not Address The Issue Of The Statute's Applicability Based Upon An Employee's Work Schedule-Based Status As A Part-Time Employee . . . . . . . . . . . . . . . . . . 3

II. OPM's Interpretive Regulation Is Entitled To Deference . . . . 15

III. The Comptroller General Did Not Misread The Legislative History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

Commodity Futures Trading Comm'n v. Schor,
478 U.S. 833 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Lorillard v. Pons,
434 U.S. 575 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Kemp, Jr.,
59 Comp. Gen. 237 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

46 Comp. Gen. 337, 340 (1966) . . . . . . . . . . . . . . . . . . 7, 14, 15, 16, 17, 21

## STATUTES AND REGULATIONS

5 U.S.C. § 5541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 9

5 U.S.C. § 5542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 8, 9, 10

5 U.S.C. § 5543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 5545 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

5 U.S.C. § 5546 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3,12, 13, 15, 19

5 U.S.C. § 5548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 6101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5 U.S.C. § 6128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5 C.F.R. § 550.121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 C.F.R. § 550.141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 C.F.R. § 550.143 . . . . . . . . . . 12

5 C.F.R. § 550.171 . . . . . . . . . . 13, 16

5 C.F.R. § 550.902 . . . . . . . . . . 11

**LEGISLATIVE AND REGULATORY HISTORY**

1966 U.S.C.C.A.N. 2495 . . . . . . . . . . 22

1971 U.S.C.C.A.N. 2147 . . . . . . . . . . 7, 8, 9, 17-18

79 Stat. 1115 . . . . . . . . . . 14, 22

79 Stat. 1116 . . . . . . . . . . 21, 22

80 Stat. 485 . . . . . . . . . . 6

81 Stat. 200 . . . . . . . . . . 6

85 Stat. 648 . . . . . . . . . . 8

33 F.R. 12458 . . . . . . . . . . 16

60 F.R. 33097-01 . . . . . . . . . . 18

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THEODORE FATHAUER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-279C |
| v. | ) | |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in support of its motion for summary judgment.

In our Response To Plaintiff's Motion For Summary Judgment And Cross-Motion For Summary Judgment ("Def. Resp.," "response," or the "initial brief"), we established that part-time Federal employees are not entitled to receive Sunday premium pay under 5 U.S.C. § 5546(a) (the "Sunday premium pay statute") because (1) the plain language of the statute does not clearly resolve the issue of part-time employees' entitlement to Sunday premium pay, and (2) the Office of Personnel Management ("OPM") has promulgated a lawful implementing regulation that limits the payment of Sunday premium pay to full-time Federal

employees, and that regulation is entitled to deference by this Court.

Plaintiffs, in their Opposition To Defendant's Motion For Summary Judgment And Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment ("Pl. Reply" or the "reply"), argue that (1) the statutory language is clear and entitles part-time Federal employees to Sunday premium pay; (2) the OPM regulation is not entitled to deference because the Chairman of the Civil Service Commission ("CSC"), in asking the Comptroller General for advice as to whether the then-newly passed Sunday premium pay statute applied to part-time employees, expressed an opinion contrary to the Comptroller General's interpretation and the OPM regulation based upon that interpretation; and (3) the Comptroller General misinterpreted the legislative history of the Sunday premium pay statute, thus invalidating both his interpretation and the OPM regulation based upon that interpretation.

As we demonstrated in our response, and further explain below, the plaintiffs' arguments cannot trump the intent of Congress and the Government's longstanding and reasonable interpretation of the Sunday premium pay statute. The defendant's motion should be granted, the plaintiffs' motion should be denied, and this Court should dismiss the

plaintiffs' complaint.

## **ARGUMENT**

I. The Plain Language Of The Sunday Premium Pay Statute Does Not Address The Issue Of The Statute's Applicability Based Upon An Employee's Work Schedule-Based Status As A Part-Time Employee

Plaintiffs reiterate their argument that, because 5 U.S.C. § 5546(a) does not contain a modifier for the statutory term "employee," all Federal employees, regardless of their work-schedule based status as full-time, part-time, or intermittent employees, are entitled to receive Sunday premium pay. Pl. Reply at 1. To bolster this argument, plaintiffs present four other premium pay statutes and their related regulations, all of which contain the term "employee" without any modifiers, and all of which allegedly apply to part-time Federal employees. The plaintiffs conclude that OPM's regulatory interpretation of the Sunday premium pay statute must be incorrect because, under the plaintiffs' view of the Federal pay statutes and regulations, it stands alone as the only premium pay statute that applies only to full-time Federal employees. Pl. Reply at 1-3.

As we established in our initial brief, plaintiffs incorrectly assume that the coverage of the Sunday premium pay statute is determined strictly by the statutory term "employee." Indeed, a close examination of the other

premium pay statutes plaintiffs cite in their reply demonstrates that the definition of "employee" (found in 5 U.S.C. § 5541) addresses broad task-related categories of Federal employees, and does not contemplate the work-schedule based qualifications upon an employee's status that are at the center of this case. Additionally, these statutes and their implementing regulations show that, to determine whether a particular premium pay statute applies to full-time employees, part-time employees, intermittent employees, or any other type of employee as defined by his or her work schedule, one must look beyond the definition of "employee" to the statutory language describing a covered "employee's" work schedule, or, absent such language, rely upon other tools of statutory construction.

The first and best example of this principle is the plaintiffs' reliance upon 5 U.S.C. § 5542 (the "overtime pay statute"). Pl. Reply at 2. The overtime pay statute contains the statutory term "employee" without any qualification or modifier. 5 U.S.C. § 5542(a). It also contains a reference to the covered employees' work-schedule based status: "[f]or full-time, part-time and intermittent tours of duty, hours of work . . . in excess of 40 hours [in a week] . . . or in excess of 8 hours in a day, performed by an employee," constitute overtime. 5 U.S.C. § 5542(a). Plaintiffs assert that

the presence of the phrase “full-time, part-time and intermittent tours of duty” “clearly indicates that both full-time and part-time employees fall within the subchapter’s definition of ‘employee.’” Pl. Reply at 2.

The phrase “full-time, part-time and intermittent tours of duty,” however, does not modify the term “employee” contained in § 5542.[1] Rather, the grammatical structure of the statute indicates that it does not, strictly speaking, apply simply to full- or part-time employees; it is applicable to any “employee” who performs a “full-time, part-time [or] intermittent tour[] of duty.”

This distinction is critical because an examination of the evolution of the overtime pay statute demonstrates that, while it has always contained an unmodified “employee” term, it has not always been fully applicable to part-time employees. Moreover, the overtime pay statute only became fully applicable to part-time employees after Congress amended it in 1971 to include the phrase “full-time, part-time and intermittent tours of duty.” Additionally, the legislative history of this addition indicates that § 5542's use of the phrase “full-time, part-time and intermittent tours of duty” has

[1] The phrase clearly does not alter or impact the statutory definition of “employee,” which is found in an entirely separate section of the subchapter. See 5 U.S.C. § 5541.

nothing to do with § 5541's statutory definition for the term "employee."

First enacted as a part of the Federal Employees Salary And Fringe Benefits Act of 1966 (the same act that introduced the Sunday premium pay statute), the overtime pay statute stated:

> Hours of work officially ordered or approved in excess of 40 hours in an administrative workweek performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates . . . ."

80 Stat. 485. The statute referenced the 40-hour workweek as the benchmark for an entitlement to overtime pay, and it did not include the term "employee."

The overtime pay statute was amended in 1967 to state:

> Hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or (with the exception of an employee engaged in professional or technical engineering or scientific activities for whom the first 40 hours of duty in an administrative workweek is the basic workweek and an employee whose basic pay exceeds the minimum rate for GS-10 for whom the first 40 hours of duty in an administrative workweek is the basic workweek) in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates . . . ."

81 Stat. 200. In this amendment, the language of the overtime pay statute

is almost identical to its present form, including language entitling an "employee" who performs "hours of work . . . in excess of 40 hours in [a week] . . . or . . . in excess of 8 hours in a day" to receive overtime pay.[2] Nevertheless, the Comptroller General interpreted the section as granting part-time employees the right to receive overtime pay for hours worked in excess of 8 per day, but not for hours worked in excess of 40 per week (unless those hours also involved shifts of more than 8 hours). See 46 Comp. Gen. 337, 340 (1966) ("under section 404 [5 U.S.C. § 5542], our view is that part-time employees are entitled to overtime compensation for hours worked in excess of 8 per day"); In re Kemp, Jr., 59 Comp. Gen. 237, 238 (1980) (observing that, under the pre-1971 version of § 5542, the Comptroller General had held that "part-time employees . . . were not entitled to payment of overtime compensation for hours worked in excess of 40 per week"); 1971 U.S.C.C.A.N. 2147, 2148 (Sen. Rep. 92-530) ("Under existing law, part-time and intermittent employees are paid overtime compensation only if they work more than 8 hours in a day. They do not receive overtime pay for work in excess of 40 hours a week.").

[2] This is the language plaintiffs rely upon to support their assertion that "[p]art-time employees can earn overtime, for example, when they work in excess of 8 hours a day, even if they do not work 40 hours a week." Pl. Reply at 2, n.1.

The Chairman of the CSC[3] apparently disagreed with the Comptroller General's interpretation of the overtime pay statute, and, in 1971, he requested remedial legislation from Congress. See 1971 U.S.C.C.A.N. at 2148 ("The legislation . . . is a result of an official recommendation to the Congress by the Chairman of the Civil Service Commission."). Congress passed Public Law 92-194, which added the phrase "full-time, part-time and intermittent tours of duty" to the beginning of § 5542. See 85 Stat. 648. The Senate report upon the bill explains the necessity and effect of the change:

> A part-time general schedule employee who works five 8 hour days, Monday through Friday, and then works a full day on Saturday will receive only his regular rate of pay for his work on Saturday.
>
> * * *
>
> The bill amends section 5542(a) of title 5, United States Code, by inserting at the beginning of that section the words, "For full-time, part-time, and intermittent tours of duty." This language will provide the specific authority to include employees having part-time and intermittent tours of duty within the language of the law authorizing pay at overtime rates of pay for work in excess of 40 hours in an administrative workweek.

1971 U.S.C.C.A.N. at 2148. Regarding the phrase's impact upon or

---

[3] The CSC is the predecessor of OPM. See Def. Resp. at 4, n2.

relevance to the definition of "employee" in § 5541, the Senate stated:

> The legislation will extend the overtime benefits to part-time and intermittent employees of the same classes of employees covered by the existing provisions of section 5542. The classes of employees are defined by section 5541 of title 5, and generally speaking, cover employees who are subject to the General Schedule, including General Schedule employees in the Judicial Branch, the Library of Congress, the Botanic Garden, and the Office of the Architect of the Capitol.

Id. In other words, the umodified use of the statutorily defined term "employee" in the pre-1971 version of § 5542 was insufficient to grant a full entitlement of overtime pay to part-time Federal employees. Thus, only when Congress specifically inserted "part-time . . . tour of duty" into the overtime pay statute did part-time Federal employees become fully entitled to receive overtime pay. Therefore, plaintiffs' argument that the statutory definition in § 5541 necessarily includes all full-time and part-time employees must fail. The § 5541 definition only lists broad classes of Federal employees, and an employee's entitlement to discrete types of premium pay with respect to his or her schedule-based status (as full-time or part-time) is governed by the specific statute establishing the individual premium pay item.

This statutory construction is also applied in the other pay statutes

and regulations relied upon by the plaintiffs. For example, 5 U.S.C. § 5543, cited by plaintiffs at page 2 of their reply, specifically incorporates § 5542 and its construction. Section 5543 entitles Federal "employees" to receive compensatory time off "instead of payment under section 5542," i.e., instead of overtime pay. 5 U.S.C. § 5543(a)(1). Because the benefit granted under § 5543 is made in lieu of the benefit granted under § 5542, the applicability of the entitlement is governed by the rules applicable to the overtime pay statute. The Comptroller General decision cited by plaintiffs in their reply brief clearly states this principle. See In re Kemp, Jr., 59 Comp. Gen. 237, 238 (1980) ("It is well established that compensatory time takes the place of monetary premium pay for irregular or occasional overtime. * * * The question of whether the benefit [under § 5543] is available to employees for work beyond their normal part-time tours of duty depends upon their entitlement to overtime compensation for those hours of work.").

Section 5545 of Title 5, United States Code, which plaintiffs cite at page 2 of their reply brief, entitles "an employee" to premium pay for night work, 5 U.S.C. § 5545(a), extended duty periods on standby status, 5 U.S.C. § 5545(c), and physical hardship or hazards, 5 U.S.C. § 5545(d).

Again, the unqualified use of the term “employee” in these subparts of § 5545 is not dispositive of the entitlement question for full- or part-time employees; other terms in the statute that relate to the employee’s schedule-based status control.

The subparts of § 5545 that address night work and hazard pay do not contain any language relating to an employee’s schedule-base status, and they are therefore not probative upon the question posed by the plaintiffs in this case. Similarly, the implementing regulations relating to these two statutory subparts, 5 C.F.R. § 550.121 (night work) and 5 C.F.R. § 550.902 (hazard pay), contain no guidance. Further, we are not aware of any administrative or judicial decisions that address this issue, nor have the plaintiffs cited any.

Section 5545(c) (standby pay), however, is helpful. The statute provides that Federal employees who occupy a “position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis . . . .” 5 U.S.C. § 5545(c)(1). The statute further provides that, when determining the “appropriate

percentage" of annualized premium pay to award, the agency shall consider, among other things, "the extent to which the duties of the position are made more onerous by . . . being extended over periods of more than 40 hours a week." Id. The implementing regulations for § 5545 echo the statute, providing an entitlement to standby premium pay when the employee must "remain at . . . his or her station during longer than ordinary periods of duty." 5 C.F.R. § 550.141. The regulation setting forth guidelines for awarding standby pay to a particular position, however, provides that "[t]he words 'longer than ordinary periods of duty' in § 550.141 mean more than 40 hours a week." 5 C.F.R. § 550.143(c). Thus, notwithstanding the statute's use of the unqualified term "employee," only de facto full-time employees may receive standby premium pay.

Finally, plaintiffs argue that the holiday premium pay statute, 5 U.S.C. § 5546(b), and its implementing regulations must apply to part-time employees because the statute and the regulations impose no restrictions, modifications, or qualifications upon the term "employee." The plaintiffs further argue that, because the holiday pay statute is contained within the same statutory section as the Sunday premium pay statute,[4] OPM's

---

[4] Sunday pay is codified at 5 U.S.C. § 5546(a); holiday pay is codified (continued...)

regulatory interpretation of the Sunday premium pay statute as applicable only to full-time employees is unreasonable, and therefore not in accordance with law.

As we have established above, the statutory term "employee" is not the proper focus when trying to determine whether a premium pay statute applies to full- or part-time Federal employees. Both the Sunday premium pay statute and the holiday pay statute use the term "employee" without qualification. Neither appears to contain any other language that directly addresses the work schedules of employees who are entitled to either form of premium pay. Therefore, there is no real statutory guidance upon the question that the plaintiffs raise in this case.

There is clear guidance, however, in the legislative history. The legislative history not only supports the agency's reasonable interpretation of the Sunday premium pay statute as applying only to full-time employees, but it also demonstrates why this restriction is not necessarily applicable to the holiday pay statute. As we established in our initial brief, prior to promulgating 5 C.F.R. § 550.171 (the "Sunday premium pay regulation"), OPM (through its predecessor, CSC), sought the advice of the Comptroller

---

[4](...continued)
at 5 U.S.C. § 5546(b).

General about whether the Sunday premium pay statute effected a significant change in Federal pay law by granting part-time Federal employees an entitlement to Sunday premium pay. Def. Resp. at 3-4 (discussing 46 Comp. Gen. 337). The Comptroller General opined that, notwithstanding the statutory language, the legislative history clearly indicated that Congress intended to enact the same pay package for all Federal employees that it had enacted for the United States Postal Service ("USPS") the year before. Id.; 46 Comp. Gen. at 339. Under the USPS pay act, "regular" employees[5] were entitled to receive Sunday premium pay, but "substitute" employees were not. 46 Comp. Gen. at 339 (discussing the USPS pay act). Therefore, because the benefits granted under both statutory schemes were intended to be the same, Sunday premium pay is available only to full-time Federal employees.

Holiday pay, on the other hand, was not wholly denied to USPS "substitute" employees. See 79 Stat. 1115 (former 39 U.S.C. § 3571(c)(3)) (substitute employees receive time-and-a-half for work on Christmas day). Therefore, by applying the same legislative-history based rationale

[5] As described in more detail below, the Comptroller General correctly correlated USPS "regular" employees with Federal "full-time" employees, and USPS "substitute" employees with Federal "part-time" employees.

formulated by the Comptroller General and adopted by OPM, the Federal Sunday premium pay statute reasonably applies only to full-time Federal employees, while its counterpart, the Federal holiday pay statute, could reasonably apply to both full-time and part-time Federal employees.[6]

II. OPM's Interpretive Regulation Is Entitled To Deference

Plaintiffs argue that "OPM's predecessor's contemporaneous construction of § 5546(a) fully supports plaintiffs' entitlement, and to the extent that any ambiguity exists, the Court should defer to that interpretation of the statute." Pl. Reply at 3-5. Plaintiffs explain that this contemporaneous interpretation is contained in the August 24, 1966, letter from the Chairman of the CSC to the Comptroller General, as described in 46 Comp. Gen. at 338 (noting that the Chairman of the CSC had "point[ed] out that the language of the [Sunday premium pay] statute does not limit the coverage of such provisions to full-time employees"). Id. at 3-4.

The Comptroller General opinion relied upon by the plaintiffs establishes that the Chairman of the CSC had written to the Comptroller General to obtain "comments [upon] a proposed FPM [Federal Personnel

[6] We do not argue that the holiday pay statute, 5 U.S.C. § 5546(b), applies to part-time Federal employees; that question is not before the Court.

Manual] letter pertaining to certain amendments made by the Federal Salary and Fringe Benefits Act of 1966," including the amendment establishing the Sunday premium pay statute. Id. The letter was also written prior to the original promulgation of the Sunday premium pay regulation, 5 C.F.R. § 550.171. See 33 F.R. 12458 (Sept. 4, 1968).

Notwithstanding the CSC Chairman's apparent first impression about the Sunday premium pay statute, the Comptroller General advised the Chairman of the CSC that the Sunday premium pay statute did not entitle part-time employees to receive Sunday premium pay. 46 Comp. Gen. at 339-40.

The Chairman of the CSC may have initially thought that the Sunday premium pay statute applied to part-time Federal employees, but he vetted that issue with the Comptroller General, received contrary advice, accepted it, and settled upon the reasonable interpretation that the statute applies only to full-time employees. In discharging its duty to enforce a statute by promulgating regulations, an agency is entitled, even expected, to consider a variety of statutory interpretations before settling upon one official interpretation that it will enforce; other interpretations the agency considers but eventually rejects, such as the one asserted by the plaintiffs here,

cannot form a basis for overturning the agency's reasonable interpretation of the statute. See, e.g., Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 845 (1986) ("It goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound."). The fact that the Chairman considered and rejected a contrary interpretation of the statute prior to promulgating a regulation does not provide basis for undoing four decades of Federal pay administration.

Moreover, there is no merit to the plaintiffs' contention that the CSC, and later OPM, were bullied into accepting the Comptroller General's decision concerning the applicability of the Sunday premium pay statute. Pl. Reply at 4. The Comptroller General's decision, although authoritative upon the issue, was a suggestion. See 46 Comp. Gen. at 340 ("We suggest the proposed FPM letter be revised to accord with the foregoing.").

To the extent the Chairman of the CSC disagreed with the Comptroller General's advice, he (or she) was free to promulgate a contrary regulation, or even approach Congress and suggest remedial legislation, consistent with the agency's practice. See, e.g., 1971

U.S.C.C.A.N. 2147, 2148 (Sen. Rep. 92-530 upon the 1971 amendment to 5 U.S.C. § 5542 (overtime pay) ("The legislation . . . is a result of an official recommendation to the Congress by the Chairman of the Civil Service Commission.").

Furthermore, if OPM disagreed with the CSC's longstanding interpretation of the Sunday premium pay statute, it has been fully empowered to revise the regulations to reflect a different interpretation. See 5 U.S.C. § 5548(a) ("The Office of Personnel Management may prescribe regulations, subject to the approval of the President, necessary for the administration of this subchapter . . . ."). OPM has not done that. Rather, in 1995, OPM reaffirmed the longstanding interpretation of the Sunday premium pay statute:

> An individual commented that part-time employees are not entitled to Sunday premium pay. OPM agrees. To clarify this, we have revised 5 C.F.R. § 550.171 and the definition of Sunday work in 5 C.F.R. § 550.103(o). This clarification is consistent with the information in expired Federal Personnel Manual Letter 550-79, which stated that part-time employees and employees who work intermittently are not entitled to premium pay for Sunday work; it also reflects a Comptroller General opinion regarding the compensation of part-time employees (46 Comp. Gen. 337 (1966)).

60 F.R. 33097-01(emphasis added).

Finally, Congress could have revised the statute upon its own initiative if it disagreed with CSC's and OPM's longstanding interpretation. The Sunday premium pay statute has been amended three times since its original enactment in 1966. See 5 U.S.C.A. § 5546 (noting textual amendments in 1967, 1968, and 1998). Part-time Federal employees have made inquiries to their Congressional representatives about the full-time limitation of this provision as far back as 1973. See Def. Resp. at 13 (citing copies of correspondence to various members of Congress, included in the Defendant's Appendix to its response, addressing the same issue posed by the plaintiffs in this case). In the 42 years since the Comptroller General opined upon the availability of Sunday premium pay to part-time Federal employees, Congress has not seen fit to interfere with OPM's reasonable interpretation. Under such circumstances, the Court should conclude that OPM's interpretation is the one Congress intended. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without [relevant] change."); Schor, 478 U.S. at 846 (stating that it is "well established that when Congress revisits a statute giving rise to a longstanding administrative

interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress") (internal quotation marks omitted). See also 5 U.S.C. § 6128(c) (providing that only full-time Federal employees working under compressed work schedules are entitled to receive Sunday premium pay).

Plaintiffs' argument upon this point should be rejected. The Court should not overturn decades of reasonable Federal pay practice because the agency empowered to administer the pay statutes briefly held a view that supports the plaintiffs' case and then quickly rejected it.

III. The Comptroller General Did Not Misread The Legislative History

Plaintiffs argue that "the Comptroller General read far too much into the statement that Congress wanted to extend that same Sunday pay entitlements to civil service employees that it had previously granted Postal employees." Pl. Reply at 5. Plaintiffs explain that, because the 1965 USPS did not specifically categorize its employees as either "full-time" or "part-time," the Comptroller General took a fatal misstep when he "erroneously conflated substitute Postal Service and part-time career civil service employees." Id. at 5-6.

The Comptroller General did not misread the legislative history of the Federal Employees Salary And Fringe Benefits Act of 1966. As we demonstrated in our initial brief, the Comptroller General correctly and reasonably observed that the USPS distinction between “regular” and “substitute” employees was the functional equivalent of the Federal distinction between “full-time” and “part-time” employees. See Def. Resp. at 13 (citing 1965 U.S.C.C.A.N. 3817, 3821 (discussing the typical scheduling of “regular” and “substitute” USPS employees), and H.R. Rep. 89-792 at 22 (stating that “[n]o longer were substitutes intermittent or part-time workers.”). See also 79 Stat. 1116 (former 39 U.S.C. § 3571(h) (1965 USPS pay act, defining “regular” and “substitute” employees); compare 46 Comp. Gen. at 339 (quoting S. Rep. 896 on H.R. 10281 (which became P.L. 89-301, the 1965 USPS pay act)) (Sunday pay is reserved for “regular employees whose 5-day work schedule includes an 8-hour shift any part of which occurs on Sunday.”) (emphasis added), with 5 U.S.C. § 6101(a)(2)(A) (directing the head of each Executive agency to “establish a basic administrative workweek of 40 hours for each full-time employee in his organization”) (emphasis added).

Under plaintiffs’ logic, no comparison could be performed between

the 1965 USPS pay act and the 1966 Federal pay act because those two organizations employed separate jargon when referring to their employees -- even though the legislative history contains statements such as "[t]his [the 1966 Federal pay act] is identical to the provisions for regular postal employees enacted last year." 1966 U.S.C.C.A.N. 2495, 2498. Indeed, plaintiffs approach this extreme when they argue that the Comptroller General's reliance upon the legislative history is flawed because the 1965 USPS pay act itself, and not any regulations or agency interpretations, limited Sunday premium pay to regular USPS employees.[7] Therefore, according to the plaintiffs, it must follow that the 1966 Federal pay act can provide benefits to Federal employees that are "identical" to those enjoyed by USPS employees only to the extent that the provisions of the two statutes are drafted using identical grammatical mechanics. Pl. Reply at 6.

Plaintiffs' argument misapprehends the fundamental concept of statutory interpretation -- the interpretation is an explanation of the meaning of the statutory text. Thus, even though the Sunday premium pay statute

---

[7] Under the 1965 USPS pay act, regular (i.e., full-time) employees received Sunday premium pay, and substitute (i.e., part-time) employees did not. See 79 Stat. 1115 (former 39 U.S.C. § 3571(e) (1965 version of USPS Sunday premium pay statute, specifying applicability to "regular" employees)); 79 Stat. 1116 (former 39 U.S.C. § 3575 (excluding substitute employees from Sunday pay)).

does not specifically state that only full-time Federal employees are entitled to receive Sunday premium pay, the CSC, OPM, the Comptroller General, and (tacitly) Congress have all affirmed that the language of the statute limits the payment of Sunday premium pay to full-time Federal employees. The entitlement is still contained in the statute.

The Comptroller General did not misread the legislative history of the 1966 Federal pay act, the CSC did not act unreasonably when it adopted the Comptroller General's interpretation of the Sunday premium pay statute, and OPM has not acted unreasonably by refraining from overturning this longstanding rule.

## CONCLUSION

For the foregoing reasons, as well as those contained in our response to plaintiff's motion for summary judgment and cross-motion for summary judgment, we respectfully request that the Court deny plaintiff's Motion for Summary Judgment and grant our Cross-Motion for Summary Judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

April 18, 2008 Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on April 18, 2008, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak