# In the United States Court of Federal Claims

Case No. 07-279C
(FILED: July 7, 2008)
TO BE PUBLISHED

| | |
|---|---|
| **THEODORE FATHAUER, et al.,** *Plaintiffs,* v. **THE UNITED STATES OF AMERICA,** *Defendant.* | 5 U.S.C. § 5546(a); 5 C.F.R. § 550.171(a); Sunday premium pay; full-time and part-time civil service employees; *Chevron* deference; express delegation of authority; statutory construction; plain language; legislative history |

***Richard J. Hirn***, General Counsel, National Weather Service Employees Organization, Washington, D.C., attorney of record for Plaintiffs.

***Devin A. Wolak***, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., attorney of record for Defendant. With him on the briefs were ***Jeffrey S. Bucholtz***, Acting Assistant Attorney General, ***Jeanne E. Davidson***, Director, and ***Mark A. Melnick***, Assistant Director.

***Lauren A. Weeman***, law clerk.

## OPINION AND ORDER

**BASKIR, Judge.**

This is a suit for lost premium pay brought by five forecasters at the National Weather Service. Plaintiffs, who are part-time employees, claim that they are entitled to the 25 percent Sunday pay differential set forth in the Sunday premium pay statute, 5 U.S.C. § 5546(a). They have been denied Sunday premium pay pursuant to the applicable Office of Personnel Management (OPM) regulation, 5 C.F.R. § 550.171(a), which extends Sunday premium pay to full-time, but not to part-time, employees.

Currently before the Court are the parties' cross-motions for summary judgment as to liability. **Principles of administrative deference require that we DENY Plaintiffs' motion and GRANT the Government's cross-motion.**

## BACKGROUND

### I. Facts

The facts of this case are not in dispute. The facts below were set forth in the Consolidated Statement of Uncontroverted Facts (CSUF) which was filed jointly by the parties on April 22, 2008. The specifics of these facts are not integral to the legal issues before us.

Each of the Plaintiffs is employed as a meteorologist by the National Oceanic and Atmospheric Administration (NOAA) of the National Weather Service (NWS), which is a component of the U.S. Department of Commerce. CSUF ¶ 1. Plaintiffs Theodore Fathauer and Richard Thoman are GS-13 Meteorologists (lead forecasters) at the NWS forecast office in Fairbanks, Alaska. *Id.* ¶ 2. Plaintiffs Robin Fox and Laurie Nisbet are GS-12 Meteorologists (general forecasters) at the NWS forecast office in Spokane, Washington. *Id.* ¶ 3. Plaintiff Edward Hogan is a GS-12 Meteorologist (aviation forecaster) at the NWS Center Weather Service Unit, located together with the Federal Aviation Administration's (FAA) Air Traffic Control Center in Islip, New York. *Id.* ¶ 4.

On August 22, 2004, NWS approved an arrangement whereby Plaintiffs Fathauer and Thoman could share a lead forecaster position at the Fairbanks forecast office. *Id.* ¶ 5. The work schedules for Plaintiffs Fathauer and Thoman were therefore changed from full-time to part-time. *Id.* Both men were assigned a regular schedule of 40 part-time hours per biweekly pay period. *Id.* On November 26, 2006, NWS approved a "job-share partnership agreement" enabling Plaintiffs Fox and Nisbet to share a general forecaster position at the Spokane forecast office. *Id.* ¶ 6. Accordingly, their work schedules were changed from full-time to part-time. *Id.* Ms. Fox was assigned a regular schedule of 32 part-time hours per biweekly pay period. *Id.* Ms. Nisbet was assigned a regular schedule of 48 part-time hours per biweekly pay period. *Id.* Plaintiff Hogan and another forecaster at the Islip Center Weather Service Unit agreed to share one full-time forecaster position through a job sharing agreement which was approved by NWS on October 10, 2005. *Id.* ¶ 7. Due to the job sharing agreement, Mr. Hogan's work schedule was changed from full-time to part-time, and he was assigned a regular schedule of 64 part-time hours per biweekly pay period. *Id.*

The NWS forecast offices in Fairbanks and Spokane must be staffed for operations 24 hours a day, 7 days a week, 365 days a year. *Id.* ¶ 8. This staffing schedule is required so that the forecast offices can fulfill their mission of providing timely forecasts and warnings of severe weather. *Id.* As part of their regular work schedules, Plaintiffs Fathauer, Thoman, Fox, and Nisbet are routinely scheduled to work Sunday shifts. *Id.* Each of these Sunday shifts are full 8-hour shifts. *Id.* The NWS Center Weather Service Unit in Islip, New York operates 16 hours a day, 7 days a week, 365 days a year in order to fulfill its mission of providing timely forecasts and weather warnings to air traffic controllers and air traffic management personnel at the

FAA's Islip Air Route Traffic Control Center. *Id.* ¶ 9. Plaintiff Hogan is routinely scheduled to work Sunday shifts as a part of his regular work schedule. *Id.*

Plaintiffs received Sunday premium pay when they were full-time employees. *Id.* ¶ 10. However, from the time each was transferred to part-time employment status and continuing through the present, none of the Plaintiffs has received Sunday premium pay. *Id.*

## II. Procedural History

Plaintiffs filed a complaint with this Court on May 4, 2007. The parties subsequently participated in an Early Neutral Evaluation (ENE) conference with Judge Robert H. Hodges, Sr., as part of the Court's Alternative Dispute Resolution program on October 23, 2007. The parties were unable to come to an amicable resolution of this matter during the ENE conference. Plaintiffs filed their Motion for Summary Judgment as to liability (Pl. Mot.) on January 28, 2008. The Government filed its Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion (Def. Cross-Mot.) on March 10, 2008. The Court heard oral argument on July 1, 2008.

# DISCUSSION

## I. Standard of Review

The parties have filed cross-motions for summary judgment as to liability pursuant to Rule 56 of the Rules of the Court of Federal Claims (RCFC). A motion for summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 670 (1997).

As the Consolidated Statement of Uncontroverted Facts demonstrates, the material facts of this case are not in dispute. The parties agree that Plaintiffs are part-time Federal employees who are not paid a Sunday differential. Therefore, the only question for this Court to consider is whether the Sunday premium pay differential set forth in 5 U.S.C. § 5546(a) should be available to part-time as well as to full-time Federal employees. This is a question of law that may properly be decided on a motion for summary judgment. *See Santa Fe Pac. R.R. Co. v. United States*, 294 F.3d 1336, 1340 (Fed. Cir. 2002); *Curry v. United States*, 66 Fed. Cl. 593, 597 (2005).

## II. History of the Sunday Premium Pay Regulation

The restriction of Sunday premium pay to full-time employees finds explicit expression in 5 C.F.R. § 550.171(a) (2007). This regulation is based upon a 1966 legal opinion of the Comptroller General interpreting § 405(c) of the Federal

Salary and Fringe Benefits Act of 1966 (FSFBA), Pub. L. No. 89-504, 80 Stat. 288 (1966), which was later codified at 5 U.S.C. § 5546(a). *See* 46 Comp. Gen. 337, B-159950, 1966 WL 1712 (1966). Plaintiffs attack the Comptroller General's opinion as legally deficient. They argue that his flawed reasoning undermines the validity of the regulation.

We review the legal history of the statute and its implementing regulation before turning to the merits of the parties' cross-motions.

**A. The Sunday Premium Pay Statute - 5 U.S.C. § 5546(a)**

The statute at issue, 5 U.S.C. § 5546(a), "Pay for Sunday and holiday work," provides in pertinent part:

> An <u>employee</u> who performs work during a regularly scheduled 8-hour period of service which is not overtime work as defined by section 5542(a) of this title [5 USCS § 5542(a)] a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

5 U.S.C. § 5546(a) (1998) (emphasis added). OPM is explicitly authorized to "prescribe regulations, subject to the approval of the President, necessary for the administration of th[e statute] . . . . " 5 U.S.C. § 5548(a). For purposes of the statute, "employee" is defined as "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A).

Shortly after the FSFBA was enacted, the Civil Service Commission (CSC, the predecessor agency to OPM) set about promulgating regulations for its administration. On August 24, 1966, the Chairman of the CSC submitted for comment to the Comptroller General a proposed Federal Personnel Manual (FPM) Letter discussing § 405(c) of the FSFBA, which covers Sunday premium pay. *See* 46 Comp. Gen. at 337. The proposed FPM Letter stated that "an employee with a regularly prearranged tour of less than 40 hours a week[ – a part-time employee – would be] entitled to premium pay for Sunday work." *Id.*

The Chairman proposed extending Sunday premium pay to part-time employees based upon his reading of the plain language of the FSFBA. Specifically, the Chairman noted that the plain language of the statute "d[id] not limit the coverage of [the Sunday premium pay] provision[] to full-time employees." *Id.* The Chairman also commented that "the evident intent of the [] premium pay provision[ wa]s to discourage agencies from requiring employees to work more than 8 hours in any day or to work on Sundays unless it [wa]s unavoidable[.]" He believed this intent applied equally to both full- and part-time employees. *Id.*

**B. The Comptroller General's Opinion**

The Comptroller General disagreed with the Chairman's interpretation of the Sunday premium pay statute. In response to the proposed FPM Letter, the Comptroller General wrote:

> While the literal language of subsection[] 405(c) ["Compensation for Sunday Work"] of [the FSFBA] does not restrict the benefits in question to full-time employees we believe the legislative history . . . support[s] the view that only full-time employees were intended to be covered thereby . . . .

*Id.* at 339. The Comptroller General found significant the following statements in a Senate Report clarifying the scope and purpose of the FSFBA:

> Section 405[(c) of the FSFBA] applies to classified and wage board employees a significant liberalization granted postal employees [by the Federal Employees Salary Act] in 1965. This section requires a premium of 25 percent of base pay for any employee whose regularly scheduled 5-day workweek includes Sunday . . . . This is identical to the provisions for regular postal employees enacted last year.

*Id.* (citing S. Rep. No. 1187 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2495, 2498) (emphasis added). The Comptroller General explained that the Federal Employees Salary Act of 1965 (FESA), Pub. L. No. 89-301, 79 Stat. 1111 (1965), stipulated that "[a] special premium pay of 25 percent of the hourly rate [would] be paid to regular [postal] employees whose 5-day work schedule include[d] an 8-hour shift any part of which occur[red] on Sunday." *Id.* (emphasis added).

The Comptroller General concluded based upon this legislative history that "part-time employees [we]re not entitled to premium pay for Sunday work." *Id.* Although he did not clearly articulate his reasoning, the Comptroller General likely assumed that "part-time" career civil service employees, like Plaintiffs, were the functional equivalent of "substitute," or "non-regular," postal employees. Similar to "substitute" postal employees, part-time civil service employees do not work regularly scheduled 40 hour workweeks. *See* H.R. Rep. 89-792 (1965) (Def. Appx. at 2) (explaining that "substitute" postal employees are "temporary replacements for absent regular employees or [] auxiliary employees for peak workload periods"). Rather, part-time employees work a schedule of less than 40 hours per workweek. *See* 5 U.S.C. § 3401(2) (1996) ("'part-time career employment' means part-time employment of 16 to 32 hours a week under a schedule consisting of an equal or varied number of hours per day . . . . ").

Once he determined that the FESA excluded "substitute" postal employees from receiving Sunday premium pay, the Comptroller General concluded that Congress similarly intended to exclude part-time civil service employees from receiving this

benefit. The Comptroller General therefore "suggested" that the CSC revise the proposed FPM Letter accordingly. 46 Comp. Gen. at 340.

**C. Applicable OPM Regulation - 5 C.F.R. § 550.171(a)**

Thereafter, the CSC promulgated a regulation captioned "Pay for Sunday work." The original text of the regulation read:

> An employee is entitled to pay at his rate of basic pay plus premium pay at a rate equal to 25 percent of his rate of basic pay for each hour of Sunday work not in excess of 8 hours.

33 Fed. Reg. 12464 (Sept. 4, 1968) (to be codified at 5 C.F.R. § 550.171(a)) (emphasis added). As promulgated, the regulation did not distinguish between full- and part-time employees. The term "employee" was simply defined as "an employee to whom this subpart applies." *Id.* at 12459 (definition to be codified at 5 C.F.R. § 550.103(c)).

However, the definition section accompanying the original regulation specifically references full-time employees. For example, a "basic workweek, for full-time employees" was defined at 5 C.F.R. § 550.103(m) as "the 40-hour workweek established in accordance with [] this subchapter." *Id.* (emphasis added). In addition, a "regularly scheduled administrative workweek, for full-time employees" was defined at 5 C.F.R. § 550.103(n) as "the period within an administrative workweek . . . within which [] employees are required to be on duty regularly." *Id.* at 12459-60. Finally, "Sunday work" was defined at 5 C.F.R. § 550.103(o) as "all work during a regularly scheduled tour of duty within a basic workweek when any part of that workweek is performed on a Sunday." *Id.* at 12460.

Although the original language of 5 C.F.R. § 550.171(a) did not differentiate between full- and part-time employees on its face, the CSC applied the regulation as instructed by the Comptroller General and did not make Sunday premium pay available to part-time employees. In 1973, Congressman Spark Matsunaga of Hawaii wrote to the CSC on behalf of a constituent – who was a part-time Federal employee – challenging the Commission's interpretation of the Sunday premium pay statute. *See* Def. Appx. at 9. The CSC replied by letter dated July 3, 1973, writing:

> In providing an interpretation of the application of [5 U.S.C. § 5546(a)] the Comptroller General, in 1966, examined the legislative history of th[e] section[]. In his decision (46 Comp. Gen. 337) the Comptroller General noted that while the language of the section[] did not restrict the benefit[] in question to full-time employees, it was his view, based on the legislative history, that the benefit[] w[as] intended only for full-time employees working the basic 40-hour workweek.

*Id.* Similar letters included in the Government's appendix indicate that the CSC provided the same response to subsequent inquiries regarding the availability of Sunday premium pay to part-time and intermittent Federal employees. *See id.* at 4-8.

In a final rule issued on June 27, 1995, OPM finally acknowledged that the original text of the Sunday premium pay regulation did not reflect its limited application to full-time employees. OPM wrote:

> An individual commented that part-time employees are not entitled to Sunday premium pay. OPM agrees. To clarify this, we have revised 5 C.F.R. 550.171 and the definition of Sunday work in 5 C.F.R. 550.103(o). This clarification is consistent with the information in expired [FPM] Letter 550-79, which stated that part-time employees and employees who work intermittently are not entitled to premium pay for Sunday work; it also reflects a Comptroller General opinion regarding the compensation of part-time employees (46 Comp. Gen. 337 (1966)).

60 FR 33097 (June 27, 1995). OPM therefore amended 5 C.F.R. § 550.171 to read as it does today: "A full-time employee is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work []." 5 C.F.R. § 550.171(a) (emphasis added). Plaintiffs challenge this regulation.

## III. The Parties' Cross-Motions

In the opening brief in support of their motion for summary judgment, Plaintiffs argue that they are entitled to judgment as a matter of law because the reasoning employed by the Comptroller General in interpreting the Sunday premium pay statute, which was subsequently adopted by OPM, is legally deficient. *See* Compl. ¶ 13; Pl. Mot. at 9-11.

Plaintiffs attack the Comptroller General's reasoning on two grounds. First, they argue that the Comptroller General erred in going beyond the plain language of 5 U.S.C. § 5546(a) because the statute is not ambiguous. Pl. Mot. at 7. Plaintiffs maintain that the plain language, which does not on its face exclude part-time employees from receiving Sunday premium pay, unambiguously applies to all Federal employees. Second, Plaintiffs contend that, even if the statute is ambiguous, the Comptroller General misinterpreted the legislative history. *See id.* at 10-12. Specifically, Plaintiffs dispute the Comptroller General's assumption that "part-time" career civil service employees were the functional equivalent of "substitute" postal employees. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Pl. Rep.) at 3-6.

Plaintiffs urge the Court to accept their interpretation of the statute over that suggested by the Comptroller General and subsequently adopted by OPM. Plaintiffs frame the question presented in this case as "[w]hether Federal employees who work less than 40 hours a week are entitled to the Sunday pay differential authorized by 5 U.S.C. § 5546(a)." Pl. Mot. at 1.

After reading Plaintiffs' opening brief, one might think that this case involves a relatively straightforward question of statutory interpretation. One might also think that we are free to accept Plaintiffs' interpretation over that of OPM if Plaintiffs' interpretation is persuasive. However, Plaintiffs have brought a direct challenge to an agency's interpretation of a statute that the agency is authorized to administer. We are therefore required to consider principles of administrative deference in adjudicating Plaintiffs' claim. It is well-settled that where, as here, "Congress [has] delegated authority to [an] agency generally to make rules carrying the force of law, and [] the agency interpretation claiming deference was promulgated in the exercise of that authority[,]" the agency's interpretation is afforded judicial deference as long as that interpretation is reasonable. *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (*Mead*) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (*Chevron*)); *Wash. State Dep't of Servs. for the Blind v. United States*, 58 Fed. Cl. 781, 786 n.7 (2003).

The Government has cross-moved for summary judgment invoking *Chevron* deference. The Government properly reframes the question presented in this case as "[w]hether [OPM's] regulatory interpretation of 5 U.S.C. § 5546(a) is arbitrary, capricious, or manifestly contrary to the statute." Def. Cross-Mot. at 1. The Government argues that the Sunday premium pay statute is ambiguous as to the precise question at issue in this case – namely, whether the term "employee" includes both full- and part-time employees. It is the Government's position that OPM's regulation is at least a reasonable interpretation of the statute and is entitled to deference. *Id.* at 9-14.

In response, Plaintiffs refine their position, arguing that the Sunday premium pay statute is not ambiguous, making *Chevron* deference inapplicable. Pl. Rep. at 1. Plaintiffs contend in the alternative that, even if the statute is ambiguous, OPM's interpretation is not entitled to deference because it is unreasonable. *Id.* at 3-7. It is to those arguments that we now turn.

### A. The *Chevron* Doctrine

Pursuant to *Chevron* and its progeny, courts that encounter an ambiguity or gap in a statute are required to defer to the reasonable interpretation of the agency charged with administering that statute. *See* 467 U.S. at 843. Before engaging in *Chevron* analysis, the Court must be certain that such deference is warranted. The Court must first verify that it is addressing an interpretation made by an agency with authority to

interpret the statute at issue. *Y.S.K. Constr. Co. v. United States*, 30 Fed. Cl. 449, 458 (1994). This is usually the case when Congress has delegated to the agency broad authority to administer the statutory program. *See id.* Where Congress has made such a broad delegation, there is an implicit assumption that Congress has also delegated the necessary incident authority to make decisions required to fill any gaps or ambiguities in that statute. *Id.*; *Chevron*, 467 U.S. at 843-44.

Here, Congress has explicitly assigned all significant responsibility for the administration of the statutory program outlined in the FSFBA to one agency: OPM. *See* 5 U.S.C. § 5548(a) (stating that OPM has the authority to "prescribe regulations . . . necessary for the administration of [the statute] . . . . "). In light of this express delegation of authority, we must review OPM's interpretation of the Sunday premium pay statute through the *Chevron* framework.

When *Chevron* deference is an issue, the Court must undertake a two-step inquiry. *Amber-Messick v. United States*, 483 F.3d 1316, 1323 (Fed. Cir. 2007). First, the Court must determine "whether Congress has directly spoken to the precise question at issue." *Id.* (citing *Chevron*, 467 U.S. at 842). If the Court determines that the intent of Congress is clear, that is the end of the matter. *Chevron*, 467 U.S. at 842. Where that is the case, "the [C]ourt, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If, however, the Court determines that "the statute is silent or ambiguous" with respect to the specific issue before it, "the question for the [C]ourt is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* at 843. Thus, the next issue we encounter is whether 5 U.S.C. § 5546(a) is ambiguous.

**1. Ambiguity in 5 U.S.C. § 5546(a)**

Here, the "precise question at issue" is whether 5 U.S.C. § 5546(a) – which stipulates that "[a]n employee who performs work during a regularly scheduled 8-hour period of service . . . a part of which is performed on Sunday" is entitled to premium pay – applies to both full-time and part-time employees. Plaintiffs maintain that the statute is unambiguous in this regard. *See* Pl. Rep. at 1. They point out that the statutory definition of "employee" is broad and does not exclude those who work part-time. They conclude that this broad definition evidences unambiguous congressional intent to include both full- and part-time employees within its scope. *See id.* at 1-2.

The statutory definition invoked by Plaintiffs states that an "employee" is "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A). Contrary to Plaintiffs' contention, this circular definition reveals nothing about the scope of the term. Indeed, even the dictionary does little to clarify the whether the word "employee" in everyday usage includes those working both full- and part-time. *See* OXFORD ENGLISH DICTIONARY (2d. Ed. 1989) (defining "employee" as "[a] person employed for wages.").

To bolster their argument that the statute is unambiguous, Plaintiffs have highlighted other provisions in the subchapter containing 5 U.S.C. § 5546(a) where the term "employee" is used to confer other premium pay benefits. Pl. Rep. at 2 (citing 5 U.S.C. §§ 5542(a), 5543, 5545). According to Plaintiffs, none of these provisions has been interpreted by OPM to apply only to full-time employees. *Id.* Plaintiffs contend that the term "employee" should be interpreted consistently throughout the subchapter and, accordingly, that § 5546(a) should apply to part-time as well as to full-time employees. *See id.* at 2-3.

The Court does not find this argument persuasive, nor particularly relevant to whether the statute is ambiguous. For example, Plaintiffs cite to 5 U.S.C. § 5542(a). This provision sets forth guidelines for calculating overtime pay rates for "employees" with "full-time, part-time and intermittent tours of duty." Plaintiffs argue that the plain language of § 5542(a), which explicitly includes these three employee classifications, "clearly indicates that both full-time and part-time employees fall within the subchapter's definition of 'employee.'" Pl. Rep. at 2. We disagree.

The inclusion of the phrase "full-time, part-time and intermittent" in § 5542(a) shows that Federal employees fall within these three classifications and confirms Congress's intent to make overtime pay available to employees in each classification. However, nothing in this provision indicates a similar congressional intent with regard to § 5546(a). To the contrary, the fact that Congress explicitly refers to "full-time, part-time and intermittent" employees in § 5542(a) and does not do so in § 5546(a) could lead one to conclude that Congress did not intend for part-time and intermittent employees to come within the purview of § 5546(a). At the very least, the different language used in these two provisions indicates that § 5546(a) is ambiguous as to the precise question at issue in this litigation.

Furthermore, as initially codified, § 5542(a) did not explicitly provide overtime benefits to part-time or intermittent employees. Rather, the provision stated that overtime pay was available to "an employee" whose "[h]ours of work officially ordered or approved [were] in excess of 40 hours in an administrative workweek." Pub. L. No. 89-554, 80 Stat. 485 (1966). Nonetheless, the Comptroller General interpreted § 5542(a) as applying to both full- and part-time employees. In the same response to the Chairman of the CSC discussed above, the Comptroller General wrote:

> We agree that the language of [§ 404 of the FSFBA, governing overtime compensation] does not restrict [overtime] benefits to full-time employees and we have found nothing in the legislative history of this or related statutes which would warrant a conclusion that such restriction was so intended. Therefore, . . . our view is that part-time employees are entitled to overtime compensation for hours worked in excess of 8 per day.

46 Comp. Gen. at 340.

The language of 5 U.S.C. § 5542(a) was subsequently amended. Two of the amendments are relevant here. First, the provision was amended in 1967 to provide overtime pay to "an employee" whose "[h]ours of work officially ordered or approved [were] in excess of 40 hours in an administrative workweek, <u>or [] in excess of 8 hours in a day</u> . . . . " Pub. L. No. 90-83, 81 Stat. 200 (1967). Pursuant to this amendment, part-time and intermittent employees were paid overtime compensation if they worked more than 8 hours in a day, but not if they worked in excess of 40 hours a week. *See* S. Rep. No. 92-530 (1971), *as reprinted in* 1971 U.S.C.C.A.N. 2147, 2148.

The provision was amended again in 1971 at the suggestion of the Chairman of the CSC. The Chairman recommended to Congress that the language of § 5542(a) be changed to expressly include part-time and intermittent employees who work in excess of 40 hours a week. *See id.* Congress therefore inserted the phrase "full-time, part-time and intermittent tours of duty." *Id*. Congress noted that the 1971 amendment "place[d part-time and intermittent] employees on the same basis with respect to premium pay for overtime work as wage board and full-time classified employees." *Id.*

The legislative evolution of 5 U.S.C. § 5542(a) is instructive. As enacted, both 5 U.S.C. §§ 5542(a) and 5546(a) used the term "employee" generally and did not differentiate between those with full-time and part-time classifications. However, the CSC, with guidance from the Comptroller General, interpreted "employee" differently depending on the perceived congressional intent.

### 2. OPM's Construction of 5 U.S.C. § 5546(a)

Regulations promulgated pursuant to an express delegation of authority "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44. This is because "[t]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)). The Supreme Court has instructed that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . . " *Chevron*, 467 U.S. at 844 (footnote omitted); *see also Mead*, 533 U.S. at 227-28.

#### a. The Agency's "Contemporaneous" Interpretation of § 5546(a)

Plaintiffs contend that OPM's interpretation of 5 U.S.C. § 5546(a) is unreasonable and is therefore not entitled to deference because it does "not reflect OPM's (or its predecessor, the CSC's) considered construction of [the provision] contemporaneous with its enactment." Pl. Rep. at 3. Plaintiffs emphasize that the CSC's proposed FPM Letter interpreted the Sunday premium pay statute as applying to

both full- and part-time employees. *Id.* at 3-4. Plaintiffs argue that, rather than deferring to the Comptroller General's more stringent interpretation, the CSC should have promulgated a regulation which reflected its initial understanding of the plain language of the statute. *Id*. at 4. Plaintiffs assert that "[the CSC] never embraced the narrower construction of § 5546(a), but has felt that its hands were tied by the narrower construction of the Comptroller General []." *Id.* (emphasis in original). Plaintiffs proceed to recite several instances where the CSC, after promulgating 5 C.F.R. § 550.171(a), commented that the agency's initial interpretation of the statute would have extended Sunday premium pay to part-time employees. *See id.*

While interesting, the CSC's first interpretation of 5 U.S.C. § 5546(a) is not controlling. As the Supreme Court has stated, "[i]t goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986). The Chairman of the CSC sought comment from the Comptroller General before promulgating 5 C.F.R. § 550.171(a). The CSC was not forced to accept the narrower construction of the statute advocated by the Comptroller General. The Comptroller General merely suggested that the CSC revise the proposed FPM Letter to reflect his interpretation. 46 Comp. Gen. at 340 ("We suggest the proposed FPM letter be revised to accord with the foregoing."). Technically, the CSC was free to ignore the Comptroller General's recommendation, risky though that might have been.

The CSC was also free to approach Congress and ask to have the language of 5 U.S.C. § 5546(a) amended to explicitly reference part-time employees. This is precisely what the CSC did when it sought to have overtime pay made available to part-time and intermittent employees. *See* 1971 U.S.C.C.A.N. 2147, 2148 (Senate Report No. 92-530 states that the 1971 amendment to 5 U.S.C. § 5542(a) was "a result of an official recommendation to the Congress by the Chairman of the [CSC].").

**b. The Comptroller General's Reading of the Legislative History**

Plaintiffs next argue that 5 C.F.R. § 550.171(a) is an impermissible construction of the Sunday premium pay statute because the Comptroller General misinterpreted the legislative history. *See* Pl. Rep. at 5. We note that, with respect to an agency's statutory construction, this Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the Court would have reached if the question had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11 (citations omitted). Our role is not to second guess the Comptroller General's reading of the relevant legislative history.

Rather, we need only determine whether the interpretation of the Sunday premium pay statute reflected in 5 C.F.R. § 550.171(a) has a reasonable basis. We conclude that it does.

In his opinion, the Comptroller General noted that the FSFBA was enacted "to extend the same [premium pay] policy to other salaried employees" that had been extended to postal employees by the FESA in 1965. 46 Comp. Gen. at 339 (citing Hearings on H.R. 14122 Before the S. Committee on Postal Office and Civil Service, 89th Cong., 2nd Sess., held on April 20, 21, 22, 25, 26 and 27, 1966, beginning on page 4). Indeed, in his response to the Chairman of the CSC, the Comptroller General quoted a portion of the Senate Report on the FSFBA explaining that § 405(c) was intended to be "identical to the [Sunday premium pay] provision[] for regular postal employees enacted [in the FESA the previous] year." *Id.* (emphasis added). Accordingly, when reviewing the CSC's proposed FPM Letter, the Comptroller General examined the language and legislative history of the FESA. He observed that the 1965 pay liberalization extended "a special premium pay 25 percent of the hourly rate . . . to regular [postal service] employees whose 5-day workweek schedule include[d] an 8-hour shift any part of which occur[red] on Sunday." *Id.* (citing S. Rep. No. 896 on H.R. 10281 which became Public Law 89-301) (emphasis added).

When the FESA was enacted, the Postal Service employed both "regular" and "substitute" employees. *See* Pl. Mot. at 11 (citing S. Rep. No. 89-910 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 3817, 3821). Plaintiffs allege that the Comptroller General "erroneously conflated substitute Postal Service and part-time career civil service employees . . . [and] could not rely on the Postal Service statute to conclude that Congress intended to deprive part-time career civil service employees of Sunday premium pay, simply because there were no part-time career employees in the Postal Service." Pl. Rep. at 6; *see also* Pl. Mot. at 11. In support of this argument, Plaintiffs cite to the Senate Report on Public Law 89-910, which became the FESA. In it, "substitute" employees are defined as those employees "whose workweek depends on the workload." Pl. Rep. at 6 n.2 (citing 1965 U.S.C.C.A.N. 3817, 3821). This definition presumably differentiates "substitute" employees from "part-time" employees like Plaintiffs who work regularly scheduled shifts. *See* CSUF ¶¶ 5-9.

However, a closer look at the legislative history of the FESA reveals that Congress limited the availability of benefits like Sunday premium pay based primarily upon the number of hours worked by an employee in excess of 40 hours per week. The House Report on Public Law 89-910 states:

> The keystone of Federal premium pay practices is first the 40-hour workweek, and second, work in excess of 8 hours in 1 day. The [proposed] legislation [] follows these precepts by prescribing premium pay for those categories of employees (1) who work in excess of their schedule to the extent a schedule of 8 hours a day or 40 hours a week can be prescribed in advance, or (2) as a minimum for all categories, premium pay for work

> performed in excess of 40 hours in 1 week. Equity for all rank and file employees is thus achieved around the base of 40 hours a week.
>
> 1. Regular: premium pay for required work in excess of the regular schedule, i.e., over 8 hours in 1 day or for a sixth or seventh day of work.
> 2. Hourly rate regular: premium pay for required work in excess of 8 hours in 1 day or 40 hours in 1 week.
> 3. Substitute: premium pay for required work in excess of 40 hours in 1 week.

H.R. Rep. No. 89-792 (Def. Appx. at 2) (emphasis added). This report recognizes three categories of employees: (1) those who have a predetermined, or "regular," work schedule of 40 hours per week; (2) those who have a "regular" work schedule of fewer than 40 hours per week; and (3) those who do not have a "regular" schedule. The report suggests that premium pay is only available to those employees who work more than 40 hours per workweek, irrespective of the three categories. Given this legislative history, the Comptroller General was reasonable in concluding that Sunday premium pay, which was limited to postal employees with a "regular" schedule of least 40 hours per workweek, did not extend to part-time civil service employees working fewer than 40 hours per week.

During oral argument, Plaintiffs' counsel tried to persuade the Court that part-time employees like Plaintiffs are included in the second category outlined above. *See* Oral Argument Recording at 10:20:06 a.m. Plaintiffs' counsel contends that in setting forth these definitions, Congress intended Sunday premium pay to be available to any employee who works a "regular" – or set – schedule, as opposed to a "substitute," who works on an as-needed basis. Plaintiffs' counsel reads the FESA as extending premium pay to all employees on a "regular" schedule, regardless of the total number of hours worked during a workweek. *See id.* at 10:17:31 a.m.

The Court is not swayed by this argument. First, Plaintiffs' counsel did not provide any legal support for it apart from the language of the definition itself. *See generally id.* at 10:14:23-10:17:31 a.m. Plaintiffs' counsel also was unable to confirm whether his interpretation was adopted by the Postal Service. *Id.* at 10:28:34 a.m. Finally, we find significant Congress's statement in the report that "[t]he keystone of Federal premium pay practices is first the 40-hour workweek, and second, work in excess of 8 hours in 1 day." H.R. Rep. No. 89-792 (Def. Appx. at 2). This statement suggests that, contrary to Plaintiffs' assertion, Congress determined eligibility for premium pay based primarily upon the number of hours and days worked each week, rather than upon the "regularity" of that work schedule. *See* 1966 U.S.C.C.A.N. 2495, 2498 ("Section 405[(c) of the FSFBA] . . . requires a premium of 25 percent of base pay for any employee whose regularly scheduled 5-day workweek includes Sunday . . . . ") (emphasis added); 46 Comp. Gen. at 339 (noting that the FESA explicitly stated that "[a] special premium pay of 25 percent of the hourly rate [would] be paid to regular [postal] employees whose 5-day work schedule include[d] an 8-hour shift any part of

which occur[red] on Sunday.") (emphasis added). The Comptroller General evidently subscribed to this reading of the legislative history over that urged by Plaintiffs. It was reasonable of him to do so.

We note that at the time the FESA and FSFBA were enacted, none of the employee classifications at issue here was clearly defined. The classifications and benefits available to employees in each category were generally framed around the number of days and hours worked, the "benchmark" employee being one who is regularly scheduled to work 40 hours per week. For example, we point to a Senate Report from 1949 discussing extending annual- and sick-leave benefits to civil service employees working part-time or on an intermittent basis. *See* S. Rep. 81-971, *as reprinted in* 1949 U.S.C.C.A.N. 1972. Although it does not define the "part-time" or "intermittent" employee classifications, the report states that to be eligible for annual- and sick-leave, such employees were required to have a "regular tour of duty, covering not less than 5 days in an administrative workweek." *Id.* at 1972.

In addition, a House Report from 1949 discussing the expansion of specific benefits for "certain postmasters, officers, and employees in the postal field" states that some of the changes "would be discriminatory because no compensation increase [was] provided for substitute and part-time employees." H.R. Rep. 81-1201, *as reprinted in* 1949 U.S.C.C.A.N. 2343, 2347 (emphasis added). Neither classification is defined in the report. However, the report shows that, contrary to the parties' representations, the Postal Service did in fact have "part-time" employees prior to the enactment of the FSFBA. *See* Pl. Rep. at 5 ("there were no part-time employees in the Postal Service [at the time the FSFBA was enacted] - a point with which both parties agree."). The report suggests that substitute and part-time were distinct employee classifications at the Postal Service. The report also stipulates that "substitute or temporary employees" and "hourly or part-time employees" would not be entitled to longevity pay. 1949 U.S.C.C.A.N. 2343, 2350. This suggests that, as early as 1949, Congress wished to limit certain pay benefits to full-time regular, or "benchmark," employees.

It bears noting that "part-time career employment" was not formally defined until 1978. In the Federal Employees Part-Time Career Employment Act of 1978 (FEPCEA), Congress provided the following definition:

> "part-time career employment" means part-time employment of 16 to 32 hours a week under a schedule consisting of an equal or varied number of hours per day, whether in a position which would be part-time without regard to this section or one established to allow job-sharing or comparable arrangements, but does not include employment on a temporary or intermittent basis.

Pub. L. No. 95-437, 92 Stat. 1055 (1978) (to be codified at 5 U.S.C. § 3401(2)). This definition clearly includes Plaintiffs. *See* CSUF ¶¶ 5-9; Pl. Mot. at 2-4. However, it was articulated long after the FSFBA was enacted. The definition did not bind the Comptroller General or the CSC when 5 C.F.R. § 550.171(a) was promulgated.

**c. Encouragement of Part-Time Federal Employment**

The final argument presented by Plaintiffs is that restricting Sunday premium pay to full-time employees is impermissible because doing so "penalizes rather than promotes part-time employment" and is therefore at odds with the objective of the FEPCEA. Pl. Mot. at 12. The stated purpose of the FEPCEA is to "provide increased part-time career employment opportunities throughout the Federal Government." 92 Stat. at 1055. Congress passed the law to encourage the creation of part-time positions after finding that "many individuals . . . possess great productive potential which goes unused because they cannot meet the requirements of a standard workweek." *Id.* Congress noted that part-time employment provides several benefits including, *inter alia*, providing parents with opportunities to balance family responsibilities with the need for additional income and enabling students who must finance their own education or vocational training to work for the Government. *Id.* In addition, Congress observed that part-time employment "benefits the Government, as an employer, by increasing productivity and job satisfaction, while lowering turnover rates and absenteeism, offering management more flexibility in meeting work requirements, and filling shortages in various occupations." *Id.*

Each of the Plaintiffs has benefitted from his or her part-time employment status in one of the ways articulated by Congress. For example, Mr. Hogan and Mr. Fox have been able to continue to provide child care and supervision to their children while maintaining a part-time schedule at NOAA. *See* Pl. Mot. at 12-13. In addition, Mr. Fathauer and Mr. Thoman are taking advantage of their part-time schedules to obtain graduate education. *Id.* at 13. Plaintiffs argue that restricting Sunday premium pay to full-time employees deters employees like them from taking part-time status and discourages new employees who would benefit from part-time employment from seeking careers with the Government. *Id.* at 14. Plaintiffs contend that denying Sunday premium pay to part-time employees is therefore contrary to the intent of Congress in enacting the FEPCEA. *See id.* at 13-14.

Plaintiffs may be correct that restricting the availability of Sunday premium pay to full-time employees may have these negative effects. However, they are making a policy argument which is appropriately addressed to the legislative branch, not to this Court. Such policy concerns are not grounds on which we may overturn decades of reasonable pay practice. *See* Defendant's Reply in Support of its Cross-Motion for Summary Judgment (Def. Rep.) at 19-20 (remarking that Congress has amended 5 U.S.C. § 5546 three times since the 1966 enactment – in 1967, 1968, and 1998 – but never overruled the interpretation set forth in 5 C.F.R. § 550.171(a)); *see also*

*Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative [] interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). Moreover, despite its supposed bureaucratic unhappiness with the Comptroller General's restrictive interpretation of the statute, neither the CSC, nor later, OPM, has ever made an official recommendation to Congress to liberalize the provision. The agency's silence with regard to the availability of Sunday premium pay for part-time employees stands in sharp contrast to its activism concerning overtime pay for these employees.

## CONCLUSION

We agree with Plaintiffs that there are deficiencies in the Comptroller General's interpretation of 5 U.S.C. § 5546(a). However, the existence of these deficiencies does not necessarily mean that the Comptroller General's ultimate conclusion was wrong, or that 5 C.F.R. § 550.171(a) must be declared invalid. Plaintiffs have failed to show that the Comptroller General's interpretation is contrary to the Sunday premium pay statute. There is nothing in the plain language or legislative history of 5 U.S.C. § 5546(a) which commands the interpretation urged by Plaintiffs. Rather, the Comptroller General's conclusion that Congress intended to make Sunday premium pay available only to full-time employees is a reasonable construction of the statute. Furthermore, as adopted by OPM, it is a reasonable interpretation to which this Court must defer. If nothing else, the complicated legislative histories of the FESA and FSFBA show that the Comptroller General's conclusion is not unreasonable.

We therefore find that 5 C.F.R. § 550.171(a), which restricts the availability of the 25 percent Sunday premium pay differential set forth in 5 U.S.C. § 5546(a) to full-time career civil service employees, is a permissible construction of the statute. Principles of administrative deference require the Court to defer to that construction. **Accordingly, we hereby DENY Plaintiffs' motion for summary judgment as to liability and GRANT the Government's cross-motion. The Clerk of the Court is ordered to enter judgment in favor of the Government. The parties shall bear their own costs.**

**IT IS SO ORDERED.**

s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge